COMMONWEALTH of Pennsylvania,
Appellee,

v.

William WALLS, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 10, 2003.
Filed March 23, 2004.

Robert H. Steinberg, Public Defender, Middleburg, for appellant.

Michael Hudock, Asst. Dist. Atty., Middleburg, for Com., appellee.

BEFORE: KLEIN, BENDER and OLSZEWSKI, JJ.

OPINION BY BENDER, J.:

¶ 1 This is an appeal from a judgment of sentence imposed upon Appellant after he pled guilty to one count of rape of a victim less than thirteen years old, one count of involuntary deviate sexual intercourse (IDSI) with a victim less than thirteen years old and one count of incest. Appellant raises one issue for our review: "Whether the sentencing court abused its discretion in sentencing [A]ppellant above the aggravated range of the guidelines to

the statutory maximum, failing to consider mitigating factors, while citing aggravating factors that were either subsumed elements of the offenses involved, or grossly mis-characterized Appellant's version, inconsistent with the court's acceptance of the pleas?" Appellants Brief at 3. We vacate and remand.

¶ 2 The following summary of relevant facts is derived from a variety of sources.[1] On October 1, 2002, Appellant pled guilty to the above enumerated offenses. The charges stem from reports that Appellant had sexually molested his seven-year old granddaughter during overnight visits at the home Appellant shared with his wife, the grandmother of the child. According to an account contained in the pre-sentence investigation report, on overnight visits the victim would sleep on the floor of her grandparent's bedroom on a bed made of piled blankets. The victim's grandmother would often arise earliest. On some occasions when the grandmother had arisen first and had left the bedroom, Appellant would leave his bed and lie down next to the victim and sexually assault her. Typically, after lying next to the victim, Appellant would pull down the victim's pajamas and underpants and rub her vagina and anus. He would then place his erect penis between her legs and/or up against her vagina and anus and then often proceed to penetrate the victim either vaginally or anally until reaching sexual climax. Appellant may have also inappropriately touched the victim in his woodshop and in

---

1. As the conviction in the present case resulted from the entry of a guilty plea, the facts cannot be culled from the transcript of testimony. Moreover, although the Commonwealth is required to provide a factual predicate on the record during the guilty plea proceedings, that transcript has not been included in the certified record. Nor has the pre-sentence investigation report been included in the certified record, although a copy appears in the reproduced record attached to Appellant's Brief. Of course, the pre-sentence investigation report does not constitute "evidence." Nevertheless, at sentencing counsel was asked if she read the report and she responded affirmatively. When asked if there were any additions or corrections, she replied negatively. As such, we believe we can rely upon material contained in that document to provide a history of the relevant facts.

the car while Appellant's wife was in a store.

¶ 3 After a report of abuse was made to the police, an investigation was conducted during which Appellant purportedly admitted that he had sexually assaulted the victim several times. Appellant was subsequently charged with a variety of counts relating to sexual abuse of a minor under the age of thirteen. Appellant then entered into a negotiated plea agreement to the charges enumerated above. The plea was "open" to the count of rape and involuntary deviate sexual intercourse and called for a standard range sentence on the charge of incest. After the completion of a pre-sentence investigation, Appellant was sentenced on March 24, 2003, to an aggregate term of twenty-one to sixty years' imprisonment. The rape and IDSI charges carried mandatory minimum sentences of five years' imprisonment and standard range sentences of 60–66 months' imprisonment and an aggravated range sentence of 66–78 months' imprisonment. Appellant received the statutory maximum for each offense, ten to twenty years' imprisonment. On the incest charge, Appellant received a sentence of one to ten years, which was within the standard range. All sentences were ordered to be served consecutively. Appellant filed a timely motion to modify sentence, which was denied on April 22, 2003. The present appeal followed.

¶ 4 We start our analysis by stating the obvious: as has been cogently articulated by the sentencing court, both at the time of sentencing and in its opinion to this Court, Appellant has done a very horrible thing. Nothing that follows in this opinion should be viewed as a trivialization of the gravity of Appellant's offenses. Nor should the fact that we engage here in an analysis that might seem to some as detached and coldly analytical be viewed as a lack of sensitivity for the wrong that was committed against the victim in the present case. However, just as the sentencing court has passionately displayed its contempt for Appellant in the present case, it has just as clearly evidenced a lack of appreciation for the interplay of the sentencing guidelines in imposing an appropriate sentence. In so doing, we believe the court has abused its sentencing discretion. It is our obligation as an appellate court to correct that error.[2]

¶ 5 It has been stated that "[s]entencing is a matter vested in the sound discretion of the sentencing judge," *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa.Super.2001), and that the "sentencing court has broad discretion in choosing the range of permissible confinements which best suits a particular defendant and the circumstances surrounding his crime." *Commonwealth v. Moore*, 420 Pa.Super. 484, 617 A.2d 8, 12 (1992). However, it has also been stated that "broad discretion" does not mean unfettered or unchecked discretion, *Commonwealth v. Gause*, 442 Pa.Super. 329, 659 A.2d 1014 (1995); rather the sentence must be "consistent with the protection of the public, the gravity of the offense, *and* the rehabilitative needs of the

---

**2.** Appellant has complied with the dictates of Pa.R.A.P. 2119(f) by including a "Statement for Reasons for Allowance of Appeal" in his brief immediately preceding the "Argument" section. While this statement is perhaps briefer than we are accustomed to seeing, we note that the Commonwealth has elected not to file a brief in the instant matter and, as such, lodges no objection to the contents of the statement. In any event, the statement does demonstrate the rather substantial departure from the sentencing guidelines and, in light of *Commonwealth v. Mouzon, infra,* we believe the statement sufficiently raises a substantial question that the sentence imposed is inappropriate under the sentencing code.

defendant." *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12, 13 (1988).

¶ 6 If the above two statements appear contradictory, it is helpful to examine sentencing discretion from a historical perspective. Prior to the late–1970's, the sentencing courts in Pennsylvania, as in most jurisdictions, did enjoy nearly unfettered discretion in imposing sentences. Our Supreme Court described the prevailing approach to sentencing in 1977 in the case of *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140, 143 (1977):

> Pennsylvania has a system of indeterminate sentencing, which carries with it "an implicit adoption of the philosophy of individual sentencing." *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976). This system of indeterminate sentencing "necessitates the granting of broad discretion to the trial judge, who must determine, among the sentencing alternatives and the range of permissible penalties, the proper sentence to be imposed." *Id.* 466 Pa. at 130, 351 A.2d at 656.

*Riggins* includes a quote that puts the matter more bluntly:

> We have ... granted the sentencer almost totally unlimited, unstructured and unreviewable discretion to impose punishment after conviction.

*Id.* at 144 (quoting Berger, Reducing Sentencing Disparity: Structured Discretion and the Sentencing Judge, 32 J.Miss.B. 414, 415 (1976)). Consistent with this approach to sentencing, appellate review was very limited. *Riggins* stated, "[t]raditionally, appellate courts have left sentences undisturbed on appeal because of the view that the trial court is in a far better position to weigh the factors involved in sentencing determinations." *Id.* at 144. However, as noted by the Court in *Riggins* "[i]ndeterminate sentencing has been the subject of much criticism on the grounds that it is inherently unfair." *Id.* at 143 n. 6. The following quote is illustrative of the criticism: "[t]he power of judges to sentence is one of the best examples of unstructured discretionary power that can and should be structured.' K. Davis, Discretionary Justice 133 (1969)." *Id.* at 144 n. 8.

¶ 7 Moreover, the American Bar Association was on record as believing the granting of such discretion was inconsistent with the approach taken in most other areas of the criminal justice system:

> Among the ironies of the law, there are many surrounding the manner in which sentences are imposed in the majority of our jurisdictions. One of the most striking involves a comparison of the methods for determining guilt and the methods for determining sentence. The guilt-determining process is hedged in with many rules of evidence; with many tight procedural rules, and, most importantly for present purposes, with a carefully structured system of appellate review designed to ferret out the slightest error. Yet in the vast majority of criminal convictions in this country—90% in some jurisdictions; 70% in others—the issue of guilt alone is not disputed.
>
> What is disputed and, in many more than the guilty-plea cases alone, what is the only real issue at stake, is the question of the appropriate punishment. But by comparison to the care with which the less-frequent problem of guilt is resolved, the protections in most jurisdictions surrounding the determination of sentence are indeed miniscule.... It is not an overstatement to say of these jurisdictions that in no other area of our law does one man exercise such unrestricted power.

American Bar Association Project on Minimum Standards for Criminal Justice, Stan-

dards Relating to Appellate Review of Sentences, Introduction at 1–2 (Approved Draft, 1968).

¶ 8 Even some highly regarded jurists were on record as opposing the granting of such broad discretion to the sentencing court. Our Supreme Court quoted future Justice of the United States Supreme Court, Judge Potter Stewart:

> Justice is measured in many ways, but to a convicted criminal its surest measure lies in the fairness of the sentence he receives. . . . It is an anomaly that a judicial system which has developed so scrupulous a concern for the protection of a criminal defendant throughout every other stage of the proceedings against him should have so neglected this most important dimension of fundamental justice.

*Shepard v. United States*, 257 F.2d 293, 294 (6th Cir.1958). Lastly, the Court further appeared to acknowledge the potential for abuse of sentencing discretion, "[t]he exercise of this discretion is 'one of the most important, and most easily abused powers vested in the trial court.'" *Riggins*, 377 A.2d at 144 (quoting *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650, 657 (1976)).

¶ 9 Amidst the above climate and a shifting of philosophies regarding the way criminal sentences are imposed, the discretion the sentencing court once enjoyed was changed dramatically by implementation of the sentencing guidelines in the late 1970's. As the Supreme Court summarized in *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617, 620 n. 2 (2002):

In 1978, the General Assembly empowered the Pennsylvania Commission on Sentencing to formulate Sentencing Guidelines, which the General Assembly subsequently adopted. This Court has recognized that the Sentencing Guidelines were promulgated in order **to structure the trial court's exercise of its sentencing power and to address disparate sentencing.** Legislative history also indicates that the Guidelines were enacted **"to make criminal sentences more rational and consistent, to eliminate unwarranted disparity in sentencing, and to restrict the unfettered discretion we give to sentencing judges."**

(Citations omitted. Emphasis added.)

¶ 10 Of course, an attendant consequence to structuring or restricting sentencing discretion is an increase in the reach of appellate review of sentencing discretion. Thus, it would be helpful at this point to dispel a misconception in the law. It is perceived by many, including, apparently, the court and ADA in the present case, that the extension of discretion to the sentencing court has resulted in a situation where the sentencing court is free to impose any sentence within the limits allowed by law, as long as it states it reasons for doing so upon the record. The corollary to this premise suggests that as long as the court states its reasons for departing from the guidelines on the record, the Superior Court is duty bound to affirm, regardless of whether or not reasons stated are viewed as reasonable or as justifying the departure.[3] This is simply not so.

---

**3.** At argument on Appellant's motion to modify sentence, the ADA asserted that the only requirement he is aware of when the court sentences in excess of the standard range is that the court put its reasons on the record. N.T. Motion to Modify Sentence, 4/22/03, at 3. Shortly thereafter, the court acknowledged that this Court's opinion in *Gause*, which counsel argued called for a lighter sentence, is "for the most part, on point." *Id.* at 4. Nevertheless, the court apparently felt that it was not necessary to heed the tenor of *Gause* as long as it acknowledged awareness of the guideline ranges. In seemingly distinguishing

As we stated in *Commonwealth v. Smart*, 387 Pa.Super. 518, 564 A.2d 512, 514 (1989):

> [the] deference paid to the trial court does not necessitate a rubber stamped approval of the sentences imposed by the sentencing court. Appellate review of sentencing matters would become a mockery and a sham if all sentences were routinely affirmed under the guise of discretion of the trial court. Further, it must be considered our function to review sentences in a more detached manner so that we can ensure not only a fair and impartial sentence under the circumstances, but also to protect against grossly disparate treatment of like offenders throughout the Commonwealth.

Thus, our duty to vacate and remand a sentence where the sentence is deemed unreasonable is founded in both case and statutory law. Indeed, 42 Pa.C.S. § 9781(c)(3), requires this Court to vacate a sentence and remand for resentencing if we find, that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." [4]

¶ 11 Moreover, this Court on numerous occasions has vacated sentences imposed both above and below the guideline ranges where we concluded that the reasons stated did not justify the departure. A possibly non-exhaustive list of such cases includes *Commonwealth v. Parrish*, 340 Pa.Super. 528, 490 A.2d 905 (1985); *Commonwealth v. Simpson*, 353 Pa.Super. 474, 510 A.2d 760 (1986); *Commonwealth v. Rizzo*, 362 Pa.Super. 129, 523 A.2d 809 (1987); *Commonwealth v. Felix*, 372 Pa.Super. 145, 539 A.2d 371 (1988); *Commonwealth v. Masip*, 389 Pa.Super. 365, 567 A.2d 331 (1989); *Smart, supra*; *Commonwealth v. Moore*, 420 Pa.Super. 484, 617 A.2d 8 (1992); *Commonwealth v. Childs*, 445 Pa.Super. 32, 664 A.2d 994 (1995); *Gause, supra.*; *Commonwealth v. Sims*, 728 A.2d 357 (Pa.Super.1999); *Commonwealth v. Kenner*, 784 A.2d 808 (Pa.Super.2001); *Commonwealth v. Eby*, 784 A.2d 204 (Pa.Super.2001); and *Commonwealth v. Mola*, 838 A.2d 791 (Pa.Super.2003). As such, it is clear that a sentence within the legal limits may be rejected by the Superior Court as an unreasonable departure from the sentencing guidelines. We now address the present case to determine whether this is such a case.

¶ 12 When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of defendant, and it must impose an individualized sentence. The sentence should be based on the minimum confinement consistent with

---

*Gause*, the court comments that there was no indication that the sentencing court in *Gause* "appreciated" the guidelines. In so distinguishing *Gause*, the court apparently believes that sentencing courts are free to go beyond the guideline ranges as long as the guideline ranges are acknowledged. As we detail in the main part of this opinion, we believe the body of law requires "faithful" adherence to the guidelines, which dictate that there exists sufficient justification for departing from the guidelines.

4. In determining whether a sentence is unreasonable, an appellate court shall have regard for:

   (1) The nature and circumstances of the offense and the history and characteristics of the defendant[;]

   (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation[;]

   (3) The findings upon which the sentence was based[; and]

   (4) The guidelines promulgated by the commission.

   42 Pa.C.S. § 9781(d).

the gravity of the offense, the need for public protection, and the defendant's needs for rehabilitation. *Commonwealth v. Simpson*, 353 Pa.Super. 474, 510 A.2d 760, 762 (1986), and, of course, the court must consider the sentencing guidelines.

■ ¶ 13 Application of the sentencing guidelines is essentially uniform among all classes of crimes, and the requirement that the court consider them is mandatory. *Commonwealth v. Begley*, 566 Pa. 239, 780 A.2d 605 (2001). As mentioned earlier, the guidelines were implemented to create greater consistency and rationality in sentencing. The guidelines accomplish the above purposes by providing a norm for comparison, *i.e.*, the standard range of punishment, for the panoply of crimes found in the crimes code and by providing a scale of progressively greater punishment as the gravity of the offense increases. By logical extension, the provision of a "norm" requires an assumption of the type of conduct that typically satisfies the elements of the crime and correlates the norm to that conduct. Indeed, this concept was recognized in *Gause*. There we stated that "the guidelines provide the predesignated ranges of punishment for the offense considering the inherent egregiousness of the conduct which is generally associated with the commission of that offense." *Gause*, 659 A.2d at 1016. Thus, the inherent seriousness of the offense is taken into consideration in the guideline recommendations.

¶ 14 The provision of a "norm" also strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's character or criminal history

that deviates from the norm and must be regarded as not within the guidelines contemplation. Given this predicate, simply indicating that an offense is a serious, heinous or grave offense misplaces the proper focus. The focus should not be upon the seriousness, heinousness or egregiousness of the offense generally speaking, but, rather, upon how the present case deviates from what might be regarded as a "typical" or "normal" case of the offense under consideration. This point is aptly demonstrated by the sentence that followed the one quoted from *Gause* above, "[c]onsequently, it follows that, unless the particular facts of the case in question are distinguishable from the typical case of that same offense, a sentence in the standard range would be called for." *Id.*

■ ¶ 15 If the sentencing court, under the guise of exercising its discretion, imposes a sentence that deviates significantly from the guideline recommendations without a demonstration that the case under consideration is compellingly different from the "typical" case of the same offense, or without pointing to other sentencing factors that are germane to the case before the court, including the character of the defendant or the defendant's criminal history, then the court is not, in reality, merely exercising its sentencing discretion. Rather, the court is, in effect, rejecting the assessment of the Sentencing Commission as to what constitutes just punishment for a typical commission of the crime in question. The cases of *Gause* and *Eby* indicate that the sentencing court is not free to reject the assessment of just punishment contained in the sentencing guidelines and interpose its own sense of just punishment.[5] Of course, the rationale for this

---

5. In *Gause* we stated, "[b]y wholly ignoring the guideline ranges the sentencing court has, in effect, interjected its own sense of just punishment for our legislature's." *Gause*,

659 A.2d at 1018. In *Eby*, we stated "[t]he court here not only failed to articulate sufficient reasons for its deviation from the guidelines, but also impermissibly relied upon its

position should be obvious, if a sentencing court were able to easily sentence outside of the guideline ranges, the goals of treating like offenders in like fashion would be frustrated and we would be, *de facto*, in a sentencing environment that existed prior to the passage of the guidelines.

¶ 16 In sentencing Appellant, the court makes commentary that severely calls into question whether the sentence was individualized to this particular case and to this particular defendant. Instead, the court seemingly has an agenda against sex offenders that involves imposing the maximum sentences allowed by law regardless of the individual circumstances of the case. Prior to imposing sentence, the court stated:

I wish that I could say that there was a treatment that would help you, that would help a pedophile. A pedophile is someone who sexually assaults children, who preys on children. I have not read anything that indicates that there is any successful, long term treatment. I wish I could say I was wrong, but I haven't seen anything that says that there is a realistic expectation that you can be successfully treated.

Not long after I went on the bench, I had a case that was similar to this, only in this case it was the father sexually assaulting his daughter. And I imposed a sentence that made sure that that young woman would have the chance of reaching adulthood, becoming 18, without ever having to deal with her father again. That was a shortsighted-sentence on my part. That didn't do what it should have done.

N.T. Sentencing, 3/24/03, at 11–12. After imposing sentence, the court summarized

its intention in imposing the sentence in question in the following paragraph:

Now, Mr. Walls, what that means is that you will be serving at least the next 21 years in a state correctional institution. That was done deliberately. Very honestly, I'll be blunt with you. I don't expect that you will ever be released from a state correctional institution. And you know what? That's fine. That's fine. You have done this to your victim; you have done this to your family; you have done this to you. And if I did not impose the sentences that I imposed, I would not be fulfilling one of my responsibilities, which is to protect members of our community from you, and I want your victim to know, I want your granddaughter to know, that it is extremely unlikely that she will ever run across you on the street. The chances are somewhere between slim and none.

*Id.* at 13–14.

¶ 17 The overall tenor extracted from the above three paragraphs is that the sentencing court has a particularly strong contempt for defendants who commit sexual offenses against children and believes that the maximum sentence allowed by law should be imposed irrespective of the sentencing guidelines and irrespective of the individual facts of the case or characteristics of the offender. While such contempt for child sex abusers is understandable and hardly surprising, the sentencing court is charged with an obligation to balance a variety of relevant factors in fashioning a just and appropriate sentence. That is, it has been recognized that the "five broad purposes of the penal system [are]: protection of society, general

singular disagreement with those guidelines." *Eby,* 784 A.2d at 209. By implication, a myriad of cases where we have found the sentence imposed excessively lenient, stand for the same proposition. *See Rizzo, supra.; Felix, supra.; Masip, supra.; Moore, supra.; Childs, supra.; Sims, supra.; Kenner, supra.*

deterrence (example to others), individual deterrence, rehabilitation, and retribution (punishment, vengeance, desserts)." *Commonwealth v. Williams*, 539 Pa. 249, 652 A.2d 283, 285 n. 1 (1994). Moreover, as alluded to above, it is incumbent upon the sentencing court to fashion a sentence individualized to the facts of the case and to the offender. *Mola, supra.* When a court evidences an established practice of treating all defendants convicted of certain crimes in a certain fashion, most notably, imposing the maximum sentence allowed by law, it violates its obligation to impose an individualized sentence. *Id.*

¶ 18 Nevertheless, even if the above passages do not display an agenda on the part of the court to impose maximum sentences of child sex offenders, it does at least strongly suggest that the court has focused to an extreme end upon certain of the principles of criminal punishment, namely, retribution/vengeance and protecting the public. As indicated above, the court is not free to reject the Sentencing Commission's assessment of an appropriate sentence and simply interpose its own sense of just punishment. Conversely, it is error for the court to base its sentence on the seriousness of the crime alone. *Parrish, supra.*

¶ 19 As for the protection of the public, undoubtedly the public could be protected from potential recidivism if every person ever convicted of a crime were given a life sentence. However, it is generally accepted that such a response is excessive, disproportionate and unwarranted. While the present case does not represent the taking of such an extreme position, in reality, it is not far behind. The court admits its intention to impose a sentence that, in consideration of Appellant's age at the time of sentencing, fifty-four, is essentially a life sentence.

¶ 20 In addition to the above discussed factors, the court also supports the departure from the guidelines by citing the following factors: Appellant was in a position of trust and had the responsibility of caring for the victim; the tender age of the victim; the fact that the victim was Appellant's granddaughter and the fact that Appellant perceived his actions as accidental as opposed to purposeful conduct. Appellant contends that the present case is very similar to *Gause, supra,* where we vacated a sentence of eighteen and-one-half to thirty-seven years' imprisonment imposed for, *inter alia,* the offenses of rape, statutory rape and endangering the welfare of a child. We agree.

¶ 21 There are considerable similarities between *Gause* and the present case. Both victims were seven years old at the time of the offenses and both victims were assaulted by a caretaker. With respect to the reliance upon such factors to justify a statutory maximum sentence, we stated:

> In defense of this sentence the court recites certain factors purportedly making the case so egregious and deserving of the maximum sentence. However, these factors, when considered, are not that uncommon in cases of this type. For instance the court notes that the victim had been entrusted to appellant's care and, after commission of the rape, had told her to keep quiet. As despicable as it may be, these cases often find a perpetrator who was taking care of the child when the incident occurred, or, worse yet, a parent of the child, and often the victims are told not to tell anyone, or even more egregiously, their lives or the lives of someone dear to them are threatened should they tell someone of the abuse. Thus, the present case, although certainly heinous, is not truly distinguishable from the majority of cases of this type and the guidelines should be considered to have

taken into account the conduct which occurred here when it set forth the ranges of sentences for the crimes in question.

*Id.* at 1018. With respect to the tender age of the victim, *Gause* stated:

In the present case, the court states that in its opinion the guidelines did not contemplate conduct as egregious as that which occurred here, that being, the rape of a seven year old child. (Sen. T. p. 9–10) This statement is correct to a degree. The rape statute applies to a victim of any age. It clearly does not contemplate only the rape of victims of tender years. The court may well be justified to consider the tender age of the victim as an aggravating factor allowing a sentence in the aggravated range. However, while the guidelines do not draw distinctions based upon the age of the victim in setting forth the sentencing ranges, in sections containing mandatory minimum sentences the Code recognizes that crimes against a certain class of victim, such as minors and elderly persons, are deserving of greater punishment. Thus, certain crimes committed against minor victims are subject to mandatory minimums as set forth in 42 Pa.C.S.A. § 9718. One such crime is rape, which compels a minimum five year sentence. Perhaps not coincidentally, the sentencing guidelines applicable to the offense of rape provide an aggravated range of 60–75 months imprisonment where the prior record score is 0.

*Id.* (footnote omitted).

¶ 22 As in *Gause*, we believe the sentencing court was entitled to treat the age of the victim as an aggravating factor since the child was seven and the elements of the offense encompass children up to age thirteen. However, we cannot agree that this or any other factor cited by the court justifies the imposition of the maximum sentence allowed by law.

¶ 23 In summation, while we acknowledge that Appellant has committed horrific crimes, neither the individual circumstances of the case nor of the offender truly stand out from other instances of the same offense. We are also aware that many individuals are of the opinion that offenders like Appellant deserve to be "put away for life." The fact of the matter is, there will always be a disparity of views on what constitutes just punishment for any particular offense, and the flames of passion burn brightest for crimes as sensitive as those committed here. However, this is precisely why the sentencing guidelines were implemented. While faithful compliance with the sentencing guidelines may result in some individuals' thirst for vengeance going unsatisfied, this is a sacrifice that must be made to promote the goals behind passage of the guidelines.

¶ 24 For the above reasons, we vacate the judgment of sentence and remand for resentencing.

¶ 25 Judgment of sentence vacated, remanded for resentencing. Jurisdiction relinquished.