**COMMONWEATLH of Pennsylvania,**
**Appellee**

v.

**Anthony S. TWITTY, Appellant.**

Superior Court of Pennsylvania.

Argued April 5, 2005.

Filed May 25, 2005.

Mark Cichowicz, Philadelphia, for appellant.

Peter Carr, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: STEVENS, TODD, and GANTMAN, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of rape,[1] involuntary deviant sexual intercourse ("IDSI"),[2] unlawful contact with minor,[3] aggravated indecent assault,[4] endangering the welfare of a child,[5] and corrupting the morals of a minor.[6] On appeal, Appellant claims that the trial court erred when it allowed a forensic laboratory manager to testify to the contents of two laboratory reports and then admitted the reports as substantive evidence when the testimony of the laboratory technician who prepared the report was not presented. Appellant also challenges the discretionary aspects of his sentence.[7] We affirm.

¶ 2 The trial court opinion sets forth the relevant facts of this case as follows.

In the early morning of February 17, 2003, sixteen (16) year old [CS] (hereinafter complainant) was at her home, located at 118 North 62nd Street in the City and County of Philadelphia, Pennsylvania with her mother's boyfriend Anthony Twitty (hereinafter appellant),

1. 18 Pa.C.S.A. § 3131.

2. 18 Pa.C.S.A. § 3123.

3. 18 Pa.C.S.A. § 6318.

4. 18 Pa.C.S.A. § 3125.

5. 18 Pa.C.S.A. § 4304.

6. 18 Pa.C.S.A. § 6301.

7. On appeal, Appellant has not pursued the seven additional claims raised in his 1925(b) statement.

and her siblings. (N.T. 7–10–03, p. 69 and p. 108). Her mother was snowed in at work as a result of a particularly harsh winter storm.[8] (N.T. 7–11–03, p. 32). While the complainant watched television in her mother's bedroom, Anthony Twitty repeatedly entered the room to talk with the child. (N.T. 7–10–03 p. 110). Eventually, he sat on the floor at the foot of the bed and asked her, "Do you want to feel good?" The complainant responded "No". (sic) (N.T. 7–10–03 pgs. 110 and 111). He repeatedly asked this question and each time the complainant responded "No". (sic) Despite the child's refusal, Anthony Twitty pulled at the complainant's robe and rubbed the outside of · her leg. (N.T. 7–10–03, pgs.111–113). The appellant, (sic) continued the unwanted touches and even offered the complainant fifty ($50.00) dollars, (sic) if she allowed him to lick and suck her breasts and vagina (N.T. 7–10–03, pgs. 114 and 115). Although the complainant refused his advances, Anthony Twitty forcefully unbuttoned the complainant's robe. (N.T. 7–10–03, pgs. 116 and 117). The appellant pulled down the complainant's pajama pants and underwear (sic) opened her legs and begin (sic) to rub on her vagina and stuck his thumb inside of her vagina. (N.T. 7–10–03, pgs. 117 and 118). During the course of the assault, the appellant rubbed his penis against her vagina for approximately five (5) to ten (10) minutes and ultimately ejaculated on the complainant's upper thigh area near her vagina. Anthony Twitty went to the bathroom and returned with a washcloth to wipe (CS)'s leg. (N.T. 7–10–03, pgs. 118 and 119).

Later that morning, the complainant left the home and went to her mother's job. (N.T. 7–10–03, pgs. 121 and 122). The complainant told her mother about the incident which had occurred the night before as well as other sexual incidents with the appellant that began when she was five (5) years old. The appellant would touch her vagina, (sic) make her perform oral sex and other sexual acts with him. *See*, (N.T. 7–10–03, pgs. 73–97 and 125–126). The complainant gave a detailed statement to the police and was taken to the Jefferson Hospital for an examination. (N.T. 7–10–03, pgs. 126–128).

Trial Court Opinion 6–18–04 at 1–2.

¶ 3 A jury trial took place and, on July 14, 2003, Appellant was found guilty of all charges. On September 3, 2003, the trial court sentenced Appellant to an aggregate sentence of forty-one (41) to eighty-two (82) years of incarceration. The instant timely appeal followed. Appellant was ordered to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b). Accordingly, Appellant filed his 1925(b) statement[9] and the trial court subsequently issued its opinion.

¶ 4 Appellant claims that his constitutional right to confrontation was violated when the trial court admitted into evidence a report prepared by a Philadelphia Police Department crime laboratory with respect to DNA evidence collected at the scene and from CS. Specifically, Appellant argues that the trial court erred by permitting the Commonwealth's expert witness, the forensic laboratory manager, to testify to the contents of the report in

8. Complainant's mother was employed by the Greyhound Bus Company located at Tenth and Filbert Streets. (N.T. 7–11–03, p.31).

9. We wish to note that Appellant's four-page 1925(b) statement hardly qualifies as "concise" and we commend the trial court for its efforts in addressing Appellant's numerous claims in the 1925(a) opinion.

violation of this Court's sharply divided *en banc* decision in *Commonwealth v. Carter*, 861 A.2d 957 (Pa.Super.2004), *petition for allowance of appeal filed*, November 29, 2004 (1068 MAL 2004).

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Carter*, 861 at 962 (quoting *Commonwealth v. Herb*, 852 A.2d 356, 363 (Pa.Super.2004)). In *Carter*, a sharply divided *en banc* panel held that a crime lab report, which indicated that material seized from the defendant was cocaine, did not qualify as a business record under the hearsay exception provided in Pa.R.E. 803(6); thus, the lab technician who prepared the report was required to testify. *Id.* at 963. Although there is a well-reasoned dissent, *Carter* was an *en banc* decision, and we have no choice but to find that the DNA reports admitted by the trial court do not qualify as a business record and, as the technicians who prepared the reports did not testify, the reports should not have been admitted.

¶ 5 However, our analysis does not end here, as we must determine whether the admission of the report constituted harmless error. This court will find an error harmless "where the uncontradicted evidence of guilt is overwhelming, so that by comparison the error is insignificant." *Id.* at 964. In concluding that the admission of the report in *Carter* did not constitute harmless error, the majority relied on the following factors: (1) that the laboratory supervisor did not testify as an expert but rather solely as a custodian of the records; (2) that, even if he had testified as an expert, his testimony was merely a repetition of the information in the lab report; (3) that the supervisor did not have a "close connection" to the actual testing; and (4) the information in the report was the only evidence of record establishing an essential element of the offense. *Id.* at 969.

¶ 6 The instant matter presents an entirely different situation. Mr. Brenner, the laboratory supervisor, was qualified and testified as an expert. N.T. 7/11/03 at 90–92. Further, his testimony was not a "mere repetition" or recitation of the laboratory reports; rather, Mr. Brenner, who had previously reviewed the reports, explained DNA to the jury, discussed DNA testing, and offered his own opinion based upon his review of the reports. N.T. 7/11/03 at 92–115. Mr. Brenner also testified that he supervised both technicians who prepared the reports and that he reviewed and signed both reports. N.T. 7/11/03 at 92–115. Lastly, the information contained in the report was not the sole evidence of record establishing an element of the crimes. In the instant matter, the DNA evidence was not used to establish identity because Appellant was, for all intents and purposes, CS's stepfather.[10] Further, CS's testimony about the abuse, which took place over a period of approximately eleven years, was uncontradicted and the DNA evidence simply corroborated her testimony about the February 17, 2003 incident. Accordingly, we find, based upon this Court's decision in *Carter*, that, while the admission of the DNA reports

10. While CS's mother and Appellant never married, they had been involved for over eleven years at the time of the incident, lived together, and had three children together.

was error, however, the error was harmless.

■ ¶ 7 Appellant challenges the discretionary aspects of his sentence. Specifically, Appellant contends that: (1) the sentencing court failed to adequately indicate its consideration of the applicable guidelines ranges; (2) the sentencing court did not provide a sufficient statement of reasons for exceeding the standard sentencing guidelines range; and (3) that the sentence was manifestly harsh and excessive.

> [S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion. Appellant challenges the discretionary aspects of sentencing for which there is no automatic right to appeal. This appeal is, therefore, more appropriately considered a petition for allowance of appeal. Two requirements must be met before a challenge to the judgment of sentence will be heard on the merits. First, the appellant must set forth in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence. Second, he must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code.

> The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis.

*Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa.Super.2001) (citations omitted).

¶ 8 In the instant matter, Appellant has filed a sufficient concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). As such, where appropriate, we shall proceed to determine whether Appellant's issues raise a substantial question and, if so, proceed to a discussion of the merits.

■ ¶ 9 Appellant first claims that the sentencing court failed to adequately indicate that it considered the Sentencing Guidelines as to each and every conviction in violation of this Court's decision in *Commonwealth v. Royer*, 328 Pa.Super. 60, 476 A.2d 453 (1984). We find that this raises a substantial question and we will therefore address the merits of this claim. *Id.*

¶ 10 We find Appellant's reliance on *Royer* to be misplaced. In *Commonwealth v. Rodda*, 723 A.2d 212 (Pa.Super.1999) (en banc), this Court modified *Royer*, holding that, when the trial court sentences outside the guidelines, the court "need not recite the numeric ranges of sentences within the guidelines so long as the record demonstrates the court's recognition of the applicable sentencing range and the deviation of sentence from that range." *Id.* at 213. In so doing, we noted that this Court has generally vacated sentences in those instances where the record suggested that, although the Court considered the guidelines, it "applied an incorrect sentence based on a misconception of the applicable sentencing range." *Id.* at 215. We further noted that, "where the record has reflected that the court acted on a sound understanding of the sentencing range and imposed sentence accurately, we have affirmed the judgment of sentence even in the absence of a guidelines recitation." *Id.* at 216.

¶ 11 Appellant here has not alleged that the trial court misconceived or in other ways erroneously applied the sentencing guidelines but rather that the sentence is not valid because the trial court did not say the "magic words." This is the very theory that we rejected in *Rodda*. We have thoroughly reviewed the sentencing transcript and find the sentencing court understood the sentencing guidelines, con-

sidered them, particularly noted its awareness that it was sentencing outside the guidelines, and provided a contemporaneous statement of its reasons for sentencing Appellant outside the guidelines. This is all that is required under *Rodda*.

¶ 12 Appellant next claims that the sentencing court did not sufficiently state its reasons for the sentence. This claim also raises a substantial question and we will therefore address the merits of this claim. *Commonwealth v. Brown*, 741 A.2d 726, 735 (Pa.Super.1999).

¶ 13 Our review of the record belies the claim that the sentencing court failed to place sufficient reasons for the sentence on the record. Prior to announcing the sentence, in a lengthy statement, the sentencing court noted: (1) the harm done to the victim; (2) the effect the crimes had on the victim's family, particularly because Appellant was the father of the victim's half-siblings; (3) the fact that the entire family was in therapy as a result of Appellant's actions; (4) Appellant's attempts to manipulate the criminal justice system, and the victim throughout the trial by, on multiple occasions, agreeing to plead guilty and then changing his mind at the last minute; and (5) Appellant's complete lack of remorse, including his statement at sentencing, during which he called the young victim a "liar." N.T. 9/03/03 at 8–13. Here, the sentencing court more than adequately stated its reasons for sentencing Appellant to the statutory maximum, and we find that the record substantiates the trial court's sentencing determinations.

¶ 14 Appellant last claims that the sentence was manifestly excessive. In *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002) (plurality), the Pennsylvania Supreme Court held that a claim that a sentence, which is within the statutory limits, is excessive can raise a substantial question. *Id.* at 435, 812 A.2d at

627–28. In order to raise a substantial claim, Appellant's 2119(f) statement must sufficiently articulate "the manner in which the sentence violates either a specific provision of the sentencing scheme set for forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Id.* at 435, 812 A.2d at 627. Appellant has adequately argued, based upon this Court's decisions in *Commonwealth v. Walls*, 846 A.2d 152 (2004) and *Commonwealth v. Caraballo*, 848 A.2d 1018 (2004), that his sentence violates the fundamental norms underlying the sentencing process. Accordingly, we will address Appellant's claim on the merits.

¶ 15 In both *Walls* and *Caraballo*, this Court overturned the sentences of sex offenders who had been sentenced to consecutive, statutory maximum sentences. *Walls*, at 153; *Caraballo*, at 1020. In both cases, this Court was concerned that the sentencing courts had adopted a blanket policy of treating all individuals convicted of certain crimes the same and that, based upon its own review of the record, the underlying circumstances of the individual cases did not justify such a radical departure from the sentencing guidelines. *See Walls, supra;* and *Caraballo, supra.*

¶ 16 These concerns are not present in the instant matter. There is nothing in the record to suggest that the sentencing court had either a blanket policy of sentencing sex offenders to the statutory maximum or that Appellant received the statutory maximum sentence simply because he was a sex offender. Instead, as discussed above, the trial court specifically focused on the devastating effect of eleven years of sexual abuse on the victim, Appellant's close relationship with victim, the effect, both psychological and financial, on the victim's family, Appellant's manipulative behavior during the trial, Appellant's com-

plete lack of remorse, Appellant's continued attempts to blame and discredit the victim, and Appellant's continued denial of responsibility for his actions, which indicates a low likelihood of rehabilitation.

¶ 17 Thus, we see nothing in Appellant's sentence that runs afoul of this Court's decisions in *Walls* and *Caraballo* or in any way violates the fundamental norms underlying the sentencing process. To the contrary, we again note that sentencing is a matter vested in the sound discretion of the trial court, and here the trial court did not abuse this discretion.

¶ 18 The judgment of sentence is affirmed.