**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Earl WILSON, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 5, 2006.

Filed April 16, 2007.

---

Joan Weiner, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Lori Mach, Public Defender, Philadelphia, for appellee.

BEFORE: JOYCE, KLEIN and BOWES, JJ.

OPINION BY KLEIN, J.:

¶ 1 Earl Wilson pled guilty[1] to two counts of robbery (F–1), two counts of burglary (F–1), and one count of PIC after he accosted two separate victims with a brick,[2] injuring one so badly that she lost almost all of her teeth and required staples in her head to close a gaping wound, and causing his other victim to suffer a black eye. The trial judge sentenced Wilson to concurrent terms of 11½–23 months' imprisonment, plus 7 years' reporting probation on each of the robbery charges.[3] Wilson was immediately paroled to a drug program after having served only 7 months' time. The Commonwealth now appeals, claiming that the trial court abused its discretion when it imposed Wilson's unreasonably lenient sentences. Because this case clearly involves the commission of a *more* severe crime than others of its kind, we agree.

¶ 2 Here, the trial court focused almost exclusively on the fact that Wilson's actions were the result of his drug addiction and that Wilson acknowledged his problem and wanted to be treated for it.[4] As a result, the court went out of its way to impose a less-than-mitigated-range sentence so that it retained the authority to immediately parole Wilson to a drug program. This sentence is clearly unreasonable in light of the unusually brutal nature of the robberies, the fact that Wilson poses a threat to the public, Wilson's past aggressive conduct, the admitted emotional and physical injuries suffered by the vic-

---

1. Wilson later entered a guilty plea to unrelated counts of possession with intent to deliver. That sentence is not involved in this appeal.

2. The criminal acts were committed on April 22, 2005 and April 25, 2005. Therefore, the 5th Edition of the Sentencing Guidelines is applicable to the present case. *See Sentencing Guidelines Implementation Manual,* (5th ed.) (applies to all sentence for felonies and misdemeanors committed on or after June 13, 1997) and *Sentencing Guidelines Implementation Manual,* (6th ed.) (applies to all sentences for felonies and misdemeanors committed on or after June 3, 2005).

3. The burglary and PIC charges merged with the robbery counts for sentencing purposes.

4. Because sentencing is a discretionary matter, there is no automatic right to appeal such a claim. Rather, before our court will hear a sentencing claim on its merits, an appellant must first set forth in its brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of the sentence. *Commonwealth v. Ritchey,* 779 A.2d 1183, 1185 (Pa.Super.2001). Our review of the record convinces us that the Commonwealth has complied with this requirement. Moreover, the Commonwealth's argument that the trial court imposed an excessively lenient sentence and did not justify its sentence with sufficient reasons raises a substantial question in this case. Therefore, we permit the Commonwealth's appeal. *See Commonwealth v. Drumgoole,* 341 Pa.Super. 468, 491 A.2d 1352 (1985).

tims, and the applicable guideline ranges.[5] Therefore, we vacate and remand for re-sentencing.

## FACTS

¶ 3 Wilson accosted his first victim as she was entering her apartment. He pushed her inside the vestibule, demanded money, hit her repeatedly in the face with a brick and took her purse. She suffered severe lacerations to her skull (requiring staples in her head to close the gash) and lost most of her teeth as a result of the incident. He followed the second victim into his apartment where he demanded money while threatening him with a brick.[6] The defendant was arrested the following day and had the brick and the first victim's cell phone in his possession. Both victims positively identified the defendant.

¶ 4 During the guilty plea hearing, the District Attorney read from his notes an interview the police had with Wilson immediately following his arrest for the robberies. During that interview, Wilson explained that he attacked his victims in order to get money to feed his crack cocaine habit. He also stated that he badly wanted help for his drug problem and that he was very sorry and did not mean to hurt anyone. N.T. Guilty Plea Hearing, 8/16/2005 at 13. Wilson also indicated during this interview that he found the brick he used to attack his first victim "lying outside on the ground down the street from her house" and that he thought he

"hit her in the head and face" with the brick "two or three" times. *Id.* Moreover, after running up to his female victim and not being satisfied with her answer that she did not have any money, he then took the "brick and start[ed] swinging at her." *Id.* at 12. When she started screaming louder, he "swung the brick a couple more times" until she fell on the floor in the hallway of her apartment building. *Id.* at 13.

## DISCUSSION
### Sentencing Guidelines

¶ 5 The offense gravity score for the robbery charge on Wilson's female victim who suffered serious bodily injury is a twelve (12) and on his male victim is a ten (10); Wilson's prior record score was a zero (0). The Commonwealth suggested a 6–15 year sentence; the defense requested a sentence that would allow Wilson to ultimately be paroled to a drug program. The trial judge sentenced Wilson to concurrent terms of 11½–23 months' imprisonment, plus 7 years' reporting probation on each of the robbery charges.[7] Because the sentence of imprisonment on each charge totaled less than two years, the trial court retained the authority to grant parole. Accordingly, Wilson was immediately paroled to a drug program after only serving 7 months.

¶ 6 Under the Sentencing Guidelines, a standard-range sentence for each robbery count would be 66–84 months (+/–12) (ap-

---

5. In determining whether a sentence is unreasonable, an appellate court shall have regard for:
   (1) The nature and circumstances of the offense and the history and characteristics of the defendant[;]
   (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation[;]
   (3) The findings upon which the sentence was based[; and]

(4) The guidelines promulgated by the commission.
42 Pa.C.S. § 9781(d).

6. Apparently, in an attempt to leave the second victim's apartment, Wilson shoved him, hit him with the brick and caused him to suffer a black eye.

7. The burglary and PIC charges merged with the robbery counts for sentencing purposes.

plying deadly weapon enhancement) and 40–54 months (+/–12) (applying deadly weapon enhancement), respectively. Therefore, Wilson's sentence fell well below even the mitigated range (36–54 months & 10–24 months) for both robberies.

¶ 7 The trial court acknowledged that it was unable to definitively ascertain whether Wilson's numerous arrests in Delaware that occurred over the last fifteen years ever resulted in convictions.[8] While the court ultimately ascribed a PRS of zero to Wilson, the court noted at sentencing that Wilson's arrests included, "criminal mischief, assault in the first degree, offensive touching, unlawful sexual intercourse, terroristic threatening [sic]," R.R. at 42a, and that this criminal record represented "the story of someone who has received multiple arrests for what appears to be aggressive conduct." *Id.* at 43a.

*Presentence Investigation Report*

¶ 8 In sentencing Wilson, the trial court relied upon a pre-sentence investigation report and a chemical dependency evaluation. The investigator who prepared the presentence investigation report summarized his evaluation of Wilson as follows:

> The present offense is serious in nature and was directed against a person. **As [a] result of his actions it would appear that he does pose a direct threat to the safety and welfare of others.** The Defendant was gainfully employed but his drug and alcohol abuse situation was out of control. The Subject has a history of being homeless and was living on the street, at times. The Subject should seek out and find any opportunity to receive drug and alcohol treatment, while in custody. Eventually, when released he will require very strict supervision with regular urine screening employed in an effort to enforce sobriety. If a drug and alcohol problem is detected, by the supervising officer, the Subject should be placed in an appropriate treatment facility.

Presentence Investigation Report, 10/6/2005 at 5–6 (emphasis added).

*Trial Court's Reasons for Sentence*

¶ 9 The trial court justified its mitigated-range sentences on the burglary and robbery convictions, by stating that its sentence was based "in light of the facts of the instant case, the defendant's background, and the requirements of the Sentencing Code." Trial Court Opinion, 4/28/2006 at 3. Specifically, the court believed that the defendant, who pled guilty, accepted responsibility for his actions and appropriately apologized to the court and the victims. The court found the defendant's violent actions were a product of his drug addiction; the defendant admitted his drug problem and expressed a strong desire to enter a drug treatment program.

¶ 10 The court indicates in its Pa.R.A.P. 1925(a) opinion that it felt powerless to supervise Wilson's drug treatment if he were to be placed in a state prison. Essentially the court found that due to overcrowding, state prisons cannot address or cure an inmate's drug dependency issues. Thus, the court felt compelled to immediately parole Wilson so that he could receive treatment outside the prison system.[9]

---

**8.** A report prepared by the presentence investigator, Thomas E. Nelson, indicates that as an adult Wilson had "5 arrests with 2 **convictions** and no commitments. [Wilson was] in open status for the arrest of 1/4/05, 1/12/05, and 6/13/91 in Delaware." PSI, 10/6005 at 1 (emphasis added). On remand, the trial court should clarify whether Wilson, in fact, had prior convictions resulting either from his Delaware arrests or any other legal infractions in another jurisdiction.

**9.** What the court failed to explain, however, is why Wilson did not serve any county time. Even Wilson's own counsel noted that his

The trial court also stated that it seriously considered the victims' injuries (physically and psychologically) and was also aware of the need to protect the public. The court warned the defendant that if he violated his probation, it would have no reservations sending him to state prison.

*Commonwealth v. Caraballo and Commonwealth v. Walls Distinguished*

¶ 11 While the facts and result of this case can be starkly contrasted with our Court's holdings in *Commonwealth v. Walls*, 846 A.2d 152 (Pa.Super.2004), appeal granted, 583 Pa. 662, 875 A.2d 1075 (2005) 1 and *Commonwealth v. Caraballo*, 848 A.2d 1018 (Pa.Super.2004), the reviewing principles and sentencing factors espoused in those cases are equally applicable to this appeal. In those cases the defendants' sentences were vacated on appeal because our Court found them to be too *harsh* under the specific circumstances surrounding the particular crimes committed. Both cases involved sentences that were well above the aggravated-range and found to be unreasonable because the trial courts focused too much on the seriousness of the offenses, did not consider mitigating factors and failed to demonstrate those cases were different from typical cases of their type.

¶ 12 In *Caraballo*, the defendant was convicted of two counts of attempting to lure a thirteen-year old girl into his car. The sentencing court imposed the maximum legal sentence on each count and ordered the sentences to run consecutively to one another. On appeal, our court classified this sentence as unreasonable because the trial court failed to take into account the fact that the defendant did not coerce, physically intimidate, threaten, strike or even make a statement to the

victim to convince her to get in his car. In fact, in *Caraballo* there was no physical harm committed against the minor victim—the crime itself was just attempt. Our Court noted in *Caraballo* there were no other distinguishing facts between that luring case and a typical case of the same offense. Specifically, there was no coercion, physical intimidation, threatening, or striking of the minor victim. *Id.* at 1021. Specifically, in *Caraballo* our Court stated that this was a *less* severe crime than others of this kind. *Id.*

¶ 13 In *Walls* the defendant pled guilty to one count each of rape, involuntary deviate sexual intercourse, and incest on his seven-year-old granddaughter. The court imposed a sentence above the aggravated range. Our Court vacated the sentence, finding that it was unreasonable because the trial court focused too much on the seriousness of the sex offenses and failed to demonstrate that this case was any different from typical cases of its type. In *Walls*, our Court reiterated what a sentencing court's purpose is when applying the guidelines in a given case:

> **The focus should … be upon how the present case deviates from what might be regarded as a "typical" or "normal" case of the offense under consideration.** Unless the particular facts of the case in question are distinguishable from the typical case of that same offense, a sentence in the standard range would be called for.

*Id.* at 158 (citing *Commonwealth v. Gause*, 442 Pa.Super. 329, 659 A.2d 1014, 1016 (1995)). Additionally, in *Commonwealth v. McIntosh*, 911 A.2d 513 (Pa.Super.2006), our Court recently stated:

---

client made substantial progress while incarcerated in county prison awaiting trial on this

case. N.T. 11/22/05, at 10.

In the context of a criminal sentence, a departure from the guidelines should not be based on the sentencing court's conclusion that the guideline range is either too harsh or too lenient, but rather, **departure should be based upon the conclusion that the conduct underlying the crime in question differed from the conduct typically associated with that crime so as to render the suggested punishment inappropriate for the particularized facts of the case.**

*Id.* at 522 (emphasis added).

■ ¶ 14 Here, the court depreciated the seriousness of Wilson's crimes in light of a seemingly penitent defendant with deep-rooted drug dependency issues. While the court indicated that it considered the victims' serious injuries as well as the importance of protecting the public, the sentence itself is not justified in light of the other factors attendant to these serious crimes. The sentencing court properly took into account the fact that Wilson is drug-dependent and that his actions on that fateful night were most likely the result of his need to get money to buy more drugs. However, the court should have also recognized the brutal nature of the acts Wilson committed. As the presentence investigative reporter noted, Wilson continues to pose a threat to the safety and welfare of others. His prior multiple arrests indicate that his aggressive behavior dates back at least fifteen years (he has a 1991 arrest from Delaware).

¶ 15 As our Court indicated in *Walls*, the sentencing court should have weighted more heavily the fact that Wilson's behavior was not indicative of a "typical" robbery. It deviated significantly and warranted a much harsher sentence that a "normal" robbery. Where in *Caraballo* there was no physical harm committed against the minor victim (in fact, the crime itself was just attempt), in the present case we have two victims who were not only emotionally scarred, but one who was physically brutalized with a brick. While the circumstances of each case will need to be independently examined to determine exactly what is the "norm," we are confident in finding that Wilson's sentence was much too lenient based on the facts of this case.

*Conclusion*

¶ 16 Because it is clear that the punishment Wilson received for his crimes was inappropriate based upon the facts of the case, we must vacate Wilson's sentence and remand for resentencing. *See Commonwealth v. Fluellen,* 345 Pa.Super. 167, 497 A.2d 1357 (1985) (court unreasonably deviated downward from sentencing guidelines when it sentenced defendant to house arrest and probation for crime of sexual assault; court did not provide adequate or proper reasons for such sentence). Wilson violently attacked his victims, knocked out almost all of one of his victim's teeth with a brick and required her to get stitches on her scalp. Both victims expressed in impact statements that they not only sustained physical injuries, but also suffered and continue to suffer serious psychological and emotional problems as a result of Wilson's actions. In return for these actions, Wilson served a mere 7 months in prison and was immediately paroled after sentencing on these crimes.

¶ 17 The court's sentence might be warranted in a case where the defendant's actions were *less* severe than the majority of like crimes, as in *Walls* and *Caraballo*. However, this is exactly the opposite case. If anything, the court would have been more than justified sentencing Wilson in the aggravated range (or possibly even *above* the guidelines). Wilson poses a threat to the community; he is a violent and aggressive individual and his crimes

were severe compared to a "typical" robbery case—his punishment should fit the crime.

¶ 18 Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.