J-S11045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OZOD MANSUROV, | : | |
| | : | |
| Appellant | : | No. 2117 EDA 2016 |

Appeal from the Judgment of Sentence May 10, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008729-2015

BEFORE: OTT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 01, 2018**

Ozod Mansurov ("Mansurov") appeals from the judgment of sentence imposed after a jury convicted him of criminal trespass.[1]  We affirm.

In its Opinion, the trial court adeptly detailed the relevant factual and procedural history, which we incorporate as though fully set forth herein. **See** Trial Court Opinion, 7/14/17, at 1-6.[2]

In this timely appeal, Mansurov presents the following issues for our review:

---

[1] **See** 18 Pa.C.S.A. § 3503(a)(1) (providing, in relevant part, that "[a] person commits an offense if, knowing that he is not licensed or privileged to do so, he … breaks into any building or occupied structure or separately secured or occupied portion thereof.").

[2] After the trial court sentenced Mansurov, he filed a timely post-sentence Motion challenging, *inter alia*, the weight and sufficiency of the evidence supporting his conviction, and the discretionary aspects of his sentence.  The trial court denied this Motion by an Order entered on June 3, 2016.

1. Whether the evidence was insufficient as a matter [of] law to find … Mansurov guilty of 18 Pa.C.S.A. § 3503, criminal trespass of a building and/or occupied structure[,] as the evidence failed to establish Mansurov was not privileged to enter the complainant's apartment[?] Likewise, the evidence was insufficient to prove he gained entry to complainant's home "by force, breaking, intimidation, unauthorized opening of locks or through an opening not designed for human access."

2. Whether the jury's finding of guilt[] on the charge of criminal trespass was against the great weight of the evidence presented at trial[,] as the testimony of the complainant was simply not credible and should not have been accepted by the jury[?] The Complainant did not testify that she told Mansurov to leave.

3. Whether the trial court erred in granting the Commonwealth of Pennsylvania's Motion to Admit … Mansurov's prior bad acts[,] pursuant to Pennsylvania Rule of Evidence 404(b)[,] involving an incident in Montgomery County[,] as it was prejudicial and was sought to show [Mansurov's] propensity to commit the acts alleged in the case before this Court[?]

4. Whether the trial court erred in granting a "stay away order" as to three [] individuals and against [] Mansurov[,] as the court was without the legal authority to do so and the court issued stay away order(s) for individuals who had no real relationship to the action[?] This part of the sentence imposed by the court was illegal.

5. Whether the trial court abused its discretion in sentencing [Mansurov] well outside the Pennsylvania Sentencing guidelines[,] and giving him a sentence of three (3) to six (6) years, when the guideline calculation was []restorative sanctions to nine (9) months[,] plus or minus three (3) months[,] on the singular charge of criminal trespass[,] and [the court] failed to articulate the reason for [] sentencing well outside of the guidelines[,] which was excessive[,] and there was no rational basis for the sentences as well as being unreasonable[?]

Brief for Appellant at 12-13.

In his first issue, Mansurov argues that the Commonwealth failed to present sufficient evidence for the jury to properly find that all of the elements of criminal trespass were met beyond a reasonable doubt. *See id.* at 20-22. Mansurov asserts as follows:

> The Commonwealth was required to show that [Mansurov] knew he was not licensed or privileged to go into the apartment of complainant[, *i.e.*, Olena [M]orenska (hereinafter, the "complainant")]. The evidence was insufficient to establish [that] Mansurov was not privileged to enter the complainant's apartment. Likewise, the evidence was insufficient to prove he gained entry to [c]omplainant's home "by force, breaking, intimidation, unauthorized opening of locks or through an opening not designed for human access."

*Id.* at 21-22 (quoting 18 Pa.C.S.A. § 3503(a)(3) (setting forth the statutory definition of "breaks into")); *see also* Brief for Appellant at 22 (asserting that "[i]t was never communicated to Mansurov that he was not permitted to enter the apartment[,] as his girlfriend[, whom Mansurov had suspected was in the complainant's residence at the time of his forced entry,] would stay there and [Mansurov] had been there before to see her.").

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply … is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined

- 3 -

circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Melvin***, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

In its Opinion, the trial court concisely addressed Mansurov's issue, set forth the applicable law, and determined that the evidence was sufficient for the jury to find that the Commonwealth had proved all elements of criminal trespass beyond a reasonable doubt. ***See*** Trial Court Opinion, 7/14/17, at 8-9. As we agree with the trial court's rationale and determination, which is supported by the record, we affirm on this basis concerning Mansurov's sufficiency challenge. ***See id.***

In his next issue, Mansurov contends that the trial court abused its discretion in denying his post-sentence Motion for a new trial, where the jury's verdict of guilty on the criminal trespass charge was against the weight of the evidence and shocks one's sense of justice. ***See*** Brief for Appellant at 22-23. According to Mansurov, "[t]he testimony of the complainant was simply not credible and should not have been accepted by the jury." ***Id.*** at 22. Mansurov further argues that "[t]he [c]omplainant did not testify that she told Mansurov to leave[,]" and she "did not see Mansurov enter the apartment, [and] did not see him damage the apartment[.]" ***Id.*** Finally, Mansurov points out that the

- 4 -

defense "presented a witness[, namely, Inobat Ramazonova ("Ramazonova"),] who stated [that] the [complainant's] apartment door sustained no noticeable damage. Further, [an additional defense witness, Nukmanzhan Khalilov ("Khalilov"),] testified [that Mansurov] had a key to the apartment[,] which would have allowed [Mansurov] to lawfully enter the apartment." *Id.* at 22-23;[3] *see also* N.T., 3/11/16, at 28-38.

Our standard of review of a weight of the evidence claim is as follows:

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

_____

[3] Mansurov fails to cite the place in the record containing the testimony he references, nor does he even identify these two witnesses by name. *See* Pa.R.A.P. 2119(c) (stating that "[i]f reference is made to … any [] matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears[.]"). We caution Mansurov that it is not the responsibility of this court to "scour the record to find evidence to support an argument." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*).

***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015) (quotation marks and citations omitted); ***see also Commonwealth v. Rabold***, 920 A.2d 857, 860 (Pa. Super. 2007) (stating that "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.") (citation omitted).

Initially, concerning Mansurov's assertion that the jury should not have credited the testimony of the complainant and weighed it in the fashion it did, this Court may not reassess the credibility of the witnesses and reweigh the evidence presented at trial, which was within the sole purview of the jury. ***See Gonzalez***, ***supra***.

Moreover, concerning the testimony of Ramazonova and Khalilov, the trial court noted in its Opinion as follows:

> Although [Mansurov] proffered a witness[, Ramazonova,] who stated that the apartment door sustained no noticeable damage, it was unclear whether [Ramazonova] fully understood the questions that were asked during either direct or cross examination. [Concerning the testimony of Khalilov, a]lthough [Khalilov] initially stated that he had observed [Mansurov] entering the unit with a key on several occasions, cross-examination and redirect examination revealed that [Khalilov] was referring to [Mansurov's] key to the front door of the multi-unit apartment building. Given the fact that [Mansurov's] family also lived in the building, this was not probative of [Mansurov's] rightful access to [the complainant's] apartment.

Trial Court Opinion, 7/14/17, at 10-11. Our review discloses that the trial court's foregoing rationale is supported by the record, and we discern no abuse of its discretion. Accordingly, none of Mansurov's contentions under his

weight challenge entitle him to relief, and the jury's verdict does not shock our collective conscience. Mansurov's second issue thus fails.

In his third issue, Mansurov asserts that the trial court abused its discretion in granting the Commonwealth's Motion *in limine*, which sought to introduce at trial evidence of Mansurov's prior bad acts (namely, his prior conviction for breaking into another ex-girlfriend's residence in August 2014 – hereinafter, "the prior bad act evidence"). **See** Brief for Appellant at 23-30. According to Mansurov, the prior bad act evidence was irrelevant to the instant charges, unduly prejudicial, and improperly introduced to prove that he had a bad character and propensity to commit crimes. **Id.** at 28, 30. Mansurov contends that, contrary to the Commonwealth's assertion in its Motion *in limine*, the prior bad act evidence was not relevant to establish motive, intent or absence of mistake. **Id.** at 26-28. Mansurov protests that "[h]ere, the Commonwealth has done nothing more than identify the similarities between the prior conviction and the charges" filed in the instant case. **Id.** at 29; **see also id.** at 28 (asserting that any similarities were "tenuous").

When reviewing an order granting a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. **Commonwealth v. Stokes**, 78 A.3d 644, 654 (Pa. Super. 2013). "The admissibility of evidence is a matter directed to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused that discretion." **Id.** (citation omitted).

"Relevance is the threshold for admissibility of evidence." **Commonwealth v. Tyson**, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*); **see also** Pa.R.E. 402. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401. However, "[t]he court may exclude relevant evidence if its probative value is outweighed by the danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Pennsylvania Rule of Evidence 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). However,

> "evidence of prior bad acts, while generally not admissible to prove bad character or criminal propensity, is admissible when proffered for some other relevant purpose so long as the probative value outweighs the prejudicial effect." [**Commonwealth v.**] **Boczkowski**, 846 A.2d [75,] 88 [(Pa. 2014)]. **See also** [**Commonwealth v.**] **Arrington**, 86 A.3d [831,] 842 [(Pa. 2014)], *citing* Pa.R.E. 404(b)(1); **Commonwealth v. Morris**, 493 Pa. 164, 425 A.2d 715, 720 (Pa. 1981) (law does not allow use of evidence which tends solely to prove accused has "criminal disposition"). Such evidence may be admitted to show motive, identity, lack of accident or common plan or scheme. **Arrington**, 86 A.3d at 842, *citing* Pa.R.E. 404(b)(2); **Commonwealth v. Briggs**, 608 Pa. 430, 12 A.3d 291, 337 (Pa. 2011) (Rule 404(b)(2) permits other acts evidence to prove motive, lack of accident, common plan or scheme and identity). In order for other crimes evidence to be admissible, its probative value must outweigh its potential for unfair prejudice against the defendant, Pa.R.E. 404(b)(2), and a comparison of the crimes proffered must

show a logical connection between them and the crime currently charged. ***Arrington***, 86 A.3d at 842.

***Commonwealth v. Hicks***, 156 A.3d 1114, 1125 (Pa. 2017).

Moreover, evidence of prior bad acts/crimes may also be "admitted to show a defendant's actions were not the result of a mistake or accident, where the manner and circumstances of two crimes are remarkably similar." ***Tyson***, 119 A.3d at 359 (citation and quotation marks omitted); ***see also Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009) (holding that evidence of defendant's prior physical assaults of his child was admissible to show absence of mistake or accident in prosecution for intentional beating death of the child).

In its Opinion, the trial court addressed Mansurov's claim and determined that the court did not err in admitting the prior bad act evidence, as (1) its probative value substantially outweighed any potential for prejudice; and (2) it was admitted to establish Mansurov's lack of mistake, not his propensity to commit crimes. ***See*** Trial Court Opinion, 7/14/17, at 12-13. We agree with the trial court's reasoning and determination, and therefore affirm with regard to this issue based on the trial court's Opinion. ***See id.***

In his fourth issue, Mansurov argues that the trial court erred and imposed an illegal sentence insofar as it imposed a "stay away Order" in connection with the sentence. ***See*** Brief for Appellant at 30-33. Mansurov urges that "the trial court was initially without authority to order the stay away

from any of the [three] individuals [at issue[4]], but more importantly[,] … [the court] ordered Mansurov to stay away, not only from the complainant in this case, but to also two [] other individuals who were not complainants, not victims and had only a tangential relationship to the case itself." **Id.** at 31 (footnote added, emphasis omitted). According to Mansurov, the trial court lacked jurisdiction to impose the stay away order, "to the extent that … [such] order may be construed as a condition of parole[.]" **Id.** at 32; **see also id.** at 33 n.4 (stating that "[a]t sentencing, the trial court indicated that it would issue 'stay away orders.' It [did] not state the stay away orders are a condition of *probation*." (citing N.T., 5/10/16, at 4) (emphasis added)).[5]

"The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." **Commonwealth v. Atanasio**, 997 A.2d 1181, 1183 (Pa. Super. 2010) (citation and brackets omitted)). "If no statutory authorization exists for a particular sentence, that sentence is illegal and

---

[4] The individuals were the complainant and two of Mansurov's ex-girlfriends, Luiza Ramazanova ("Ramazanova") and Magdalena Zielinska ("Zielinska").

[5] In support of his claim, Mansurov cites the decision of this Court in **Commonwealth v. Mears**, 972 A.2d 1210 (Pa. Super. 2009), wherein the panel held that "the Pennsylvania Board of Probation and Parole has exclusive authority to determine **parole** when the offender is sentenced to a maximum term of imprisonment of two or more years[.] Therefore, any condition the sentencing court purported to impose on Appellant's state parole is advisory only." **Id.** at 1212 (emphasis added, citation and quotation marks omitted).

subject to correction." ***Commonwealth v. Hughes***, 986 A.2d 159, 160 (Pa. Super. 2009) (citation omitted).

Moreover, the Sentencing Code provides that, as a condition of probation, a trial court may require a defendant to "satisfy any [] conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty …." 42 Pa.C.S.A. § 9754(c)(13); ***see also Commonwealth v. McBride***, 433 A.2d 509, 510 (Pa. Super. 1981) (citing to subsection 9754(c)(13) and explaining that an offender placed on probation "does not enjoy the full panoply of constitutional rights otherwise enjoyed by those who have not run afoul of the law.") (citation and brackets omitted); ***Commonwealth v. Carver***, 923 A.2d 495, 497 (Pa. Super. 2007) (stating that probation is rehabilitative in design, protecting the interests of the public as well as the defendant).

Initially, there is no merit to Mansurov's claim that the trial court lacked jurisdiction to impose the stay-away Order. Mansurov refers to the trial judge's remark made in imposing sentence that "when [Mansurov] comes out on **parole**, he will need a stay away order." Brief for Appellant at 33 n.4 (emphasis added by Mansurov) (purporting to quote the transcript from the

sentencing hearing, N.T., 5/10/16, at 49).[6]  However, regardless of this purported passing remark, the written sentencing Order, which states that the court imposed the stay-away condition as part of Mansurov's *probation*, controls.  **See Commonwealth v. Borrin**, 80 A.3d 1219, 1226-27 (Pa. 2013) (stating that "[i]n Pennsylvania, the text of the sentencing order, and not the statements a trial court makes about a defendant's sentence, is determinative of the court's sentencing intentions and the sentence imposed.").

Additionally, the stay-away condition of Mansurov's probation was not unduly restrictive, and was designed to rehabilitate him.  In imposing the stay-away Order, the trial court was mindful of Mansurov's pattern of stalking and invading the personal space of women, which included his two ex-girlfriends (*i.e.*, Ramazanova and Zielinska) who were covered under the stay-away Order.  Accordingly, the stay-away Order was reasonable, and specifically tailored to (a) facilitate Mansurov's recovery and rehabilitation; and (b) provide for the safety of the public by preventing him from further harassing the subject women.  **See, e.g., McBride**, 433 A.2d at 510-11 (upholding the trial court's order that the defendant have no contact with the juvenile victim whose morals he was convicted of corrupting, where it was reasonable and

---

[6] The transcript from the sentencing hearing is not contained in the electronic record certified to this Court.  **See Commonwealth v. Lesko**, 15 A.3d 345, 410 (Pa. 2011) (explaining that it is the responsibility of the appellant, not the trial court, to provide a complete record for review, including any necessary transcripts).  Moreover, though Mansurov purports to have included a copy of this transcript in his reproduced record, it is not contained therein.

necessary to rehabilitate the defendant). Accordingly, Mansurov's fourth issue does not entitle him to relief.

In his final issue, Mansurov contends that the trial court abused its discretion by imposing a manifestly excessive and unreasonable sentence. *See* Brief for Appellant at 33-42. According to Mansurov, the trial court, in imposing a sentence that is above the applicable sentencing guidelines, failed to (a) consider Mansurov's circumstances and rehabilitative needs; and (b) state on the record reasons for the sentence imposed. *See id.* at 34-35.

Mansurov challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. *See Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where, as here, the appellant has preserved the sentencing challenge for appellate review by raising it at sentencing or in a timely post-sentence motion, the appellant must (1) include in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence, pursuant to Pa.R.A.P. 2119(f); and (2) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Hill*, 66 A.3d at 363-64.

Here, Mansurov included a Rule 2119(f) Statement in his brief. *See* Brief for Appellant at 33-35. Moreover, his above-mentioned claims present a substantial question for our review. *See Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa. Super. 2009) (observing that "[t]he failure to set forth adequate reasons for the sentence imposed has been held to raise a

substantial question. Likewise, an averment that the court … failed to consider all relevant factors raises a substantial question.") (citations omitted); *Commonwealth v. Holiday*, 954 A.2d 6, 10 (Pa. Super. 2008) (stating that "[a] claim that the sentencing court imposed a sentence outside of the guidelines without specifying sufficient reasons presents a substantial question for our review.").

Mansurov challenges as manifestly excessive the court's sentence of three to six years in prison, where the guideline range was restorative sanctions to nine months. *See* Brief for Appellant at 37. *But see also id.* (pointing out that the statutory maximum for a conviction of criminal trespass is five to ten years in prison). Additionally, Mansurov maintains that "[d]uring the [sentencing] hearing, the court failed to cite a single reason for its sentence[.]" *Id.* at 39; *see also id.* at 42. Finally, Mansurov argues that the sentencing court failed to take into account his particular circumstances, character, and rehabilitative needs. *Id.* at 37.

We review discretionary aspects of sentence claims under the following standard: "[S]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006). Moreover, the sentencing court has broad discretion in choosing the range of permissible confinement that best suits a particular defendant and the circumstances surrounding his crime. *Commonwealth v. Walls*, 846 A.2d 152, 154-55 (Pa. Super. 2004).

The Sentencing Code sets forth the considerations a trial court must take into account when formulating a sentence, stating that "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Additionally, in every case where a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence. *Id.* When doing so,

> a trial judge ... [must] demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1264 (Pa. Super. 2012) (citation and brackets omitted). However, "[a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence[.]" *Commonwealth v. Crump*, 995 A.2d 1280, 1283 (Pa. Super. 2010).

Finally, when evaluating a challenge to the discretionary aspects of sentence, it is important to remember that the sentencing guidelines are purely advisory in nature. *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007); *see also Commonwealth v. Walls*, 926 A.2d 957, 963 (Pa.

2007) (stating that "rather than cabin the exercise of a sentencing court's discretion, the [sentencing] guidelines merely inform the sentencing decision.").

Mansurov's claim that the sentencing court did not state any reasons for the sentence it imposed is belied by the record. In its Opinion, the trial court explains that, at sentencing, it stated, *inter alia*, as follows prior to sentencing Mansurov:

> I'll certainly put on the record the history of [Mansurov] and the … the testimony of the officers[, and] the testimony of [Mansurov's] past domestic violence incidents that were presented are an aggravating factor. I think the nature of this case, the Prior Bad Acts that the [c]ourt admitted into evidence, and witnesses -- I believe two witnesses that testified to Prior Bad Acts, that certainly is a consideration. All of the testimony presented at trial I think make the sentence appropriate. The Prior Bad Acts, the testimony at trial, the testimony we heard today from the officers, as well as [Mansurov's] juvenile incidents[,] and the other domestic violence incidents presented that show a pattern by [Mansurov] of violating women and physically attacking women and stalking women, has been abundantly shown based on what was presented here today.

Trial Court Opinion, 7/14/17, at 15 (quoting N.T., 5/10/16, at 47). The trial court further stated in its Opinion as follows: "Based on the findings of the court, the aggravating factors grossly outweighed any mitigation. A standard range sentence was not appropriate for the conduct of [Mansurov]. Therefore the imposition of sentence in this case was proper and was adequately explained on the record." Trial Court Opinion, 7/14/17, at 15-16. We agree with the trial court's rationale and discern no abuse of its discretion in imposing a sentence, above the guideline range, which was commensurate

with the seriousness of the crime, Mansurov's criminal history, and the danger he posed to women and the community.

Moreover, the sentencing court had the benefit of a pre-sentence investigation report ("PSI"). It is well settled that where a sentencing court is informed by a PSI, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." **Commonwealth v. Ventura**, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citing **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988)). Additionally, "[t]he sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the [PSI]; thus properly considering and weighing all relevant factors." **Ventura**, 975 A.2d at 1135 (citation omitted).

Because the sentencing court in the instant case had reviewed Mansurov's PSI, it is presumed that the court considered, *inter alia*, his individualized circumstances and character. **See Ventura, supra**; **see also Commonwealth v. Sheller**, 961 A.2d 187, 191-92 (Pa. Super. 2008) (stating that the trial court did not abuse its discretion in imposing a sentence beyond the aggravated range where the court considered the pre-sentence investigation report, sentencing guidelines, protection of the public, and the appellant's rehabilitative needs). Thus, Mansurov's final issue entitles him to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/1/18

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0008729-2015 |
| | : | |
| vs. | : | **FILED** |
| | : | |
| OZOD MANSUROV | : | JUL 1 4 2017 |
| | | Office of Judicial Records |
| **O P I N I O N** | | Appeals/Post Trial |

NICHOLS, CAROLYN H., J.                                                    July 16, 2017

The Defendant, Ozod Mansurov, appeals from the judgement of sentence entered in the

Philadelphia County Court of Common Pleas, following his conviction for Criminal Trespass (18

Pa C.S.A. §3503 §§A1). The relevant facts and procedural history are as follows.

## PROCEDURAL HISTORY

On May 14, 2015, Defendant was arrested and charged with Burglary (18 § 3502(a)(1)),

Intimidating a Witness (18 § 4952(a)(1)), Criminal Trespass (19 § 3503(a)(1), Theft by Unlawful

Taking (18 § 3921(a)), Receiving Stolen Property (18 § 3925(a)), Terroristic Threats with Intent

to Terrorize Another (18 § 2706(a)(1)), Stalking (18 § 2709.1(a)(1)), and Harassment (18 §

2709(a)(1). See, Bill of Information. Prior to trial, on February 1, 2016, the Commonwealth filed

a motion to introduce prior bad acts of the defendant under Pa.R.E. § 404(b). At the conclusion

of oral argument on February 10, 2016, the motion was granted. On February 16, 2016,

Defendant filed a motion for reconsideration of the court's 404(b) ruling. Defense counsel made



CP-51-CR-0008729-2015 Comm v Mansurov, Ozod
Opinion

7975138961

1

oral argument on March 9, 2016, at which point the motion was denied and the matter proceeded to trial. At the conclusion of the two-day trial on March 11, 2016, the jury found Defendant guilty of criminal trespass. He was found not guilty on the charges of Burglary and Stalking, but hung on the remaining charges, which the Commonwealth moved to nolle prosse. At that time, sentencing was deferred to allow for preparation of a presentence investigation report. On May 10, 2016, Defendant was sentenced to three to six years state incarceration plus a three-year probationary tail.

Defendant filed a timely Notice of Appeal with the Superior Court of Pennsylvania on July 5, 2016. This court ordered Defendant to file a 1925(b) on July 12, 2016. After this court granted Defendant an extension, Defendant timely filed a statement of matters on August 2, 2016.

## FINDINGS OF FACT

After finishing work on May 2, 2015, Olena Horenska ("Ms. Horenska") returned to her apartment at 2101 Winchester Avenue in Philadelphia, Pennsylvania. N.T. 3/10/16 at 24. At that time, Ms. Horenska lived with two roommates: Fatima and her daughter, Elena. *Id.* at 20. In addition, Elena's sister Luiza periodically visited the apartment, staying there when she fought with Defendant, who was her boyfriend at the time. *Id.*

After arriving home from work, Ms. Horenska went to her bedroom to take a nap. *Id.* at 24. Some time later, she awoke to the sound of very loud knocking on the front door. *Id.* Ms. Horenska went to the front door, where she heard the voice of Defendant, who she immediately recognized as Luiza's boyfriend. *Id.* at 25. She informed Defendant that his girlfriend was not there, and also explained that because she was alone in the home, she did not want to let him

2

inside. *Id.* at 25. At that time, the front door was secured with two locks and a chain. *Id.* at 26. However, Ms. Holenska soon noticed that door was "very close to open" and was only being held closed by one chain. *Id.* Before Defendant could enter the home, Ms. Holenska ran to her bedroom and closed her door. *Id.* Shortly thereafter, she heard Defendant going through each area of the apartment, repeatedly asking where his girlfriend, Luiza, and her mother, Fatima, had gone. *Id.* at 28.

Defendant approached the bedroom door and asked Ms. Horenska to open it; she asked Defendant to promise that he would not hurt her; he obliged. *Id.* at 27. After opening the door, Ms. Horenska stepped aside, and Defendant proceeded to check the closet and other areas where people might potentially hide. *Id.* Throughout this exchange, he continued to ask Ms. Horenska questions about when his girlfriend and her mother left and appeared to be "very angry." *Id.* Ms. Horenska told Defendant that Luiza and her mother had left the country. *Id.* at 28. Defendant asked her if she had called the police; she said that she did not, and offered to show Defendant her phone so he could verify her claim. *Id.* He declined, but explained that if she did, she would "have problems" and that he would kill her. *Id.*

During this exchange, Defendant was still in Ms. Holenska's bedroom, where the two were standing only a few feet away. *Id.* Ms. Holenska testified that she felt very afraid, given that Defendant "said he's going to kill me, he swears to God." *Id.* at 29. After finishing their conversation in the bedroom, Defendant retreated to the living room, where he took two stuffed animals from the corner and began to leave the apartment. *Id.* at 30. Ms. Holenska asked who would fix the door; Defendant replied that it was not his problem, as she should have opened the door for him. *Id.*

3

At this point, Ms. Holenska observed that wooden door was crooked and could not be closed completely. *Id.* at 31. There were also wooden pieces all over the surrounding area. *Id.* Ms. Horenska went to the window overlooking the parking lot at the apartment building; she observed Defendant getting into his car, then carelessly backing out and loudly accelerating as he left the area. *Id.* At this time, Ms. Holenska testified that she sat down to cry before calling to ask a friend if he could help repair the door, as she was too afraid to call the police. *Id.* After Ms. Holenska's friend arrived, they contacted maintenance to ask whether the door could be fixed. *Id.* at 32. They were informed that in order for maintenance to repair the door, they would need to provide them with a police report; at this time, she contacted the police. *Id.* Following her statement to police, Ms. Holenska was shown a series of photographs and was asked to make an identification. *Id.* at 34. She identified Defendant. *Id.*

Ms. Holenska and her friend returned to the apartment, where maintenance was able to fix the door enough so it would close. *Id.* Ms. Holenska asked her friend to stay with her at the apartment, as she did not feel safe there alone. *Id.* Sometime after midnight, Ms. Holenska heard knocking on the front door. *Id.* She went to the bathroom (the room furthest from the front door) and called 911; her friend went to the front door. *Id.* Through the bathroom window, Ms. Holenska heard Defendant's voice in a very angry and loud tone. *Id.* at 35. At this point, Defendant left and the police arrived, at which point Ms. Holenska provided the officer with a statement. *Id.*

The following day, Ms. Holenska and her friend left the house at roughly 8:30am. *Id.* at 36. Upon her return later that afternoon, Ms. Holenska observed pieces of the wood door on the ground. *Id.* She entered the apartment and tried not to touch anything; she noticed that the glass

4

coffee table was broken, there were small pieces of glass on the floor, there was a broken mirror hanging on the wall, and the apartment smelled like gas, even though all of the burners were off. *Id.* At this point, Ms. Horenska made a third call to the police. *Id.* at 37. After giving the responding officer a statement, Ms. Holenska then packed up her things and left the apartment to relocate to another state. *Id.*

At trial, Kaleen Harrigan ("Ms. Harrigan") testified for the Commonwealth regarding an incident that occurred on August 2, 2014 involving Defendant. *Id.* at 57. At that time, Ms. Harrigan was living in the Blair Mill East Apartments in Horsham, Pennsylvania. *Id.* at 58. Ms. Harrigan's unit was located on the bottom floor of the building and featured a patio, which was directly below her upstairs neighbor's balcony. *Id.*

At some time in the afternoon on the date in question, Ms. Harrigan heard "extremely loud banging" on the door of a nearby apartment unit. *Id.* at 59. She then witnessed Defendant "get boosted up into the top apartment," at which point the glass door on the upstairs unit's balcony was "ripped open." *Id.* Ms. Harrigan recognized Defendant as the boyfriend of her upstairs neighbor, indicating that the two had a "huge fight" about a week prior to the incident. *Id.* Ms. Harrigan stated that because it was the middle of the day, she knew her neighbor was not at home, so she called the police. *Id.*

Officer Clarence Dickerson ("Officer Dickerson") also testified regarding the August 2014 incident, in which he responded to a call for a burglary while on duty for the Upper Moreland Township Police Department. *Id.* at 63. Officer Dickerson knocked on the door of the unit and stated that he was a police officer, but no one answered. *Id.* at 66. At that point, he

5

notified building maintenance of the situation and obtained a key to enter the property. *Id*. Once

inside, Officer Dickerson discovered Defendant in the shower. *Id*.

Magdalena Zielinska ("Ms. Zielinska") also testified regarding August 2014 incident. *Id*.

at 97. On that date, Ms. Zielinska was in a fight with Defendant and refused to answer his calls.

At the time of the incident, Ms. Zielinska was not home, but had received numerous phone calls

from Defendant, which she declined to answer. *Id*. Although Defendant had spent the night at the

apartment on at least one prior occasion, Ms. Zielinska stated that he never paid rent, nor did he

leave any personal items behind when he left. *Id*. at 100. She indicated that she did not give

Defendant keys to her apartment, nor did she give him permission to enter her apartment or

retrieve any items. *Id*. Additionally, she said there was no "normal" way of entering the

apartment other than through the front door; the only possible point of entry was to climb

through the balcony, as her unit at the time was on the second floor. *Id*.

## MATTERS COMPLAINED OF ON APPEAL

1. The evidence was insufficient as a matter of law to find defendant, Ozod Mansurov guilty of 18 Pa. C.S.A. § 3503, criminal trespass of a building and/or occupied structure as the evidence failed to establish Mansurov was not privileged to enter the complainant's apartment. Likewise, the evidence was insufficient to prove he gained entry to complainant's home "by force, breaking, intimidation, unauthorized opening of locks or through an opening not designed for human access."

2. The jury's finding of guilty on the charge of criminal trespass was against the great weight of the evidence presented at trial as the testimony of the complainant was simply not credible and should not have been accepted by the jury. The complainant did not testify that she told Mansurov to leave.

3. The trial court erred in granting the Commonwealth of Pennsylvania's Motion to Admit defendant, Ozod Mansurov's prior bad acts pursuant to Pennsylvania Rule of Evidence 404(b) involving an incident in Montgomery County as it was prejudicial and was sought

6

to show defendant's propensity to commit the acts alleged in the case before this Court.

4. The trial court erred in denying defendant, Ozod Mansurov's Motion for a Mistrial during the course of the trial proceedings. Counsel has requested a copy of the Notes of Testimony from the Trial to Review, however, the trial notes have not been reproduced. Therefore, counsel would request leave of court to amend this 1925(b) Statement upon receipt of the Notes of Testimony with respect to the mistrial issue.

5. The trial court erred in granting a "stay away order" as to three (3) individuals and against Mr. Mansurov as the court was without the legal authority to do so and the court issued stay away order(s) for individuals who had no real relationship to the action. This part of the sentence imposed by the court was illegal.

6. The trial court abused its discretion in sentencing defendant well outside the Pennsylvania Sentencing guidelines and giving him a sentence of three (3) to six (6) years when the guideline calculation was "restorative sanctions to nine (9) months plus or minus three (3) months on the singular charge of criminal trespass *and* failed to articulate the reason for the sentencing well outside of the guidelines which was excessive and there was no rational basis for the sentences as well as being unreasonable.

7. The trial court erred in allowing two (2) police officers with no connection to the case testify at the time of sentencing on grounds of hearsay and relevance and the erred in allowing a letter to be read by a mother of the complainant which was clearly hearsay and which she was not a victim and which was not a victim impact statement.

## DISCUSSION

### I. Sufficiency Claim - The evidence presented was sufficient to support the Defendant's conviction for criminal trespass.

When evaluating a sufficiency claim, the standard is whether, viewing all evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined each element of the crime was established beyond a reasonable doubt. *Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa. Super. 2010). The Superior Court considers all the evidence admitted, without regard to any claim that some of the evidence

7

was wrongly allowed. *Id.* The Superior Court will not weigh the evidence or make credibility determinations. *Id.* Moreover, any doubts concerning a defendant's guilt were to be resolved by the fact finder, unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence. *Id.*

The Commonwealth may meet its burden by proving a crime's elements with evidence which is entirely circumstantial and the trier of fact, who determines credibility of witnesses and the weight to give the evidence produced, is free to believe all, part, or none of the evidence. *Commonwealth v. Riley*, 811 A.2d 610, 614 (Pa. Super. 2002), quoting *Commonwealth v. Brown*, 701 A.2d 252, 254 (Pa. Super. 1997). Ultimately, "the test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt." *Commonwealth v. Whiteman*, 485 A.2d 459, 462 (Pa. 1984).

To sustain a conviction for criminal trespass, the Commonwealth must prove that Defendant entered premises, knowing that he was not licensed or privileged to do so. 18 Pa.C.S. §3503; See also, *Commonwealth v Goldsborough*, 426 A.2d 126 (Pa. Super. 1981). It is a defense to prosecution under this section if "the actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain." 18 Pa.C.S.A. §3503(c)(3). However, "in most cases the Commonwealth will meet its burden of proving that the defendant was not licensed or privileged to enter by having the owner or occupant of the building testify that he or she did not give the defendant permission to enter." *Commonwealth v Knight*, 419 A.2d 492, 500 (Pa. Super. 1980).

In the instant case, Defendant claims that the Commonwealth failed to demonstrate that (1) he was not privileged to enter the complainant's apartment; and (2) that he gained entry to the

8

home "by force, breaking, intimidation, unauthorized opening of locks or through an opening not designed for human access." However, for the reasons that follow, these claims are without merit.

First, it was established at trial that Ms. Horenska explicitly denied Defendant permission to enter the apartment. Additionally, nothing in the record indicates that Defendant had a reasonable belief that he was otherwise authorized to enter the apartment, as his only connection to the unit was through his girlfriend Luiza, who was not a resident. Therefore, it is clear that Defendant lacked the requisite authorization to enter the apartment unit, which necessarily invalidates his argument regarding privilege.

Next, Defendant argues that there was insufficient evidence to show that he gained entry to the home "by force, breaking, intimidation, unauthorized opening of locks or through an opening not designed for human access." At trial, Ms. Horenska testified that after she denied Defendant access to the residence, she noticed that the front door locks were close to open. Ms. Horenska then ran and hid with the Defendant still outside the door and the door secured. During that time, Defendant grew increasingly frustrated, eventually using some manner of force to break through the front door (which was locked) and enter Ms. Horenska's home. The mere fact that Defendant was in the apartment is enough to establish this element, as he was not authorized to enter the residence.

## II. Weight of the Evidence - The Trial Court's verdict was not against the weight of the evidence.

The Defendant also claims that the verdict was against the weight of the evidence, as (1) the complainant's testimony was not credible; and (2) the complainant did not ask Defendant to leave. In reviewing a weight claim, the appellate court focuses solely on whether the trial court

9

abused its discretion; it does not consider the underlying question of whether the verdict itself was against the weight of the evidence. *Commonwealth v Widmer*, 744 A.2d 745, 751 (Pa. 2000). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Commonwealth v. Johnson*, 910 A.2d, 60 (Pa. 2006).

A weight claim actually concedes sufficiency of the evidence, as the appellate court is to focus only on quality of the trial court's discretion. *Widmer*, 744 A.2d at 751. Therefore, "[t]he test is not whether the court would have decided the case in the same way, but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail." *Commonwealth v. Whiteman*, 485 A.2d 459, 462 (Pa. 1984). Accordingly, in order to reverse a trial court's ruling on a weight of evidence claim, it "must determine that the verdict is so contrary to the evidence as to 'shock one's sense of justice.'" *Commonwealth v. Hitner*, 910 A.2d 721, 733 (Pa. Super. 2006).

In the instant case, several witnesses testified for the Commonwealth as to their observations of the condition of the front door. Although Defendant proffered a witness who stated that the apartment door sustained no noticeable damage, it was unclear whether the witness fully understood the questions that were asked during either direct or cross examination. Although the witness initially stated that he had observed Defendant entering the unit with a key on several occasions, cross-examination and redirect examination revealed that the witness was referring to Defendant's key to the front door of the multi-unit apartment building. Given the fact

10

that Defendant's family also lived in the building, this was not probative of Defendant's rightful access to Ms. Horenska's apartment.

## III. The Commonwealth's Motion to Introduce Prior Bad Acts was properly granted, as the evidence was relevant to show Defendant's lack of mistake.

Evidentiary rulings are within the sound discretion of the trial court and should not be reversed absent a clear abuse of discretion. *Commonwealth v. Reefer*, 393 Pa. Super. 193, 573 A.2d 1153, 1154 (1990) (citation omitted). The decision whether to admit or exclude evidence lies within the sound discretion of this Court, which is not subject to reversal except for abuse of that discretion. *Commonwealth v. Mayhue*, 536 Pa. 271, 639 A.2d 421, 431 (1994). An abuse of discretion is not merely an error in judgment but a gross misapplication of the law, manifestly unreasonable judgment, or demonstrable bias or partiality. *Commonwealth v. Kubiac*, 550 A.2d 219, 223 (1988).

Relevant evidence of other crimes or bad acts committed by the defendant are admissible as long as they are for a purpose other than propensity to commit crime. *Commonwealth v. Brown*, 342 A.2d 84 (Pa. 1972). Under the Pennsylvania Rules of Evidence §404(b)(2), "evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake. Additionally, if such evidence is found relevant and its uses is for the purpose other than showing a propensity to commit crime, its probative value must outweigh its potential prejudice. Pa.R.E. §404(b)(3).

Evidence of other crimes is admissible to show the defendant's actions were not the result of a mistake or accident "where the manner and circumstance of the two crimes are remarkably

11

similar." *Commonwealth v. Tyson*, 119 A.3d 353 at 359 (Pa. Super. 2015). In its motion, the Commonwealth cites to the *Tyson* case, in which the Superior Court found that the trial court should have admitted prior act evidence of the defendant committing a rape in the prosecution of another rape; in so holding, the court noted similarities between the crimes including that the defendant was acquainted with both victims, who were both black females in their 20s, that he was a guest in their home, that both victims were in a weakened or compromised state, that both victims lost consciousness and that both awoke to the defendant having vaginal intercourse with them Id. at 360.

In the instant case, Defendant argues that the evidence was inadmissible as it was (1) prejudicial; and (2) was used solely for the purpose of demonstrating propensity. For the reasons that follow, these points are without merit.

First, Defendant claims that the evidence is prejudicial, which would necessarily render it inadmissible. However, this is clearly not the case. In ruling on the admissibility of evidence, the test is not whether it is prejudicial; instead, the test is whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Here, the court found that the probative value of the evidence outweighed any prejudicial effect.

Next, Defendant claims that the evidence itself was admitted for the improper purpose of showing Defendant's propensity. However, the prior bad acts evidence was admitted not to show propensity, but to establish Defendant's lack of mistake. The accusations by Ms. Harrigan and Ms. Horenska serve to clearly demonstrate this principle. First, the incidents occurred nine months apart, with the second one taking place only five days after Defendant pled guilty to the charges in the initial case. Not only were the two incidents close in time, but they were also

12

similar in character. In both instances, Defendant targeted ex-girlfriends who were not at home when he arrived to break into their respective residences. The ex-girlfriends were both young females, as were the witnesses to the illegal entries in both cases. Also, in both instances, Defendant not only forcibly entered the premises, but engaged in varying degrees of evasion from law enforcement, hiding in the shower in one instance and actually running away from the scene in the other. Therefore, the admission of the prior acts by Defendant was properly admitted.

## IV.    Defendant's claim that the court erred by denying the Motion for a Mistrial is too vague and does not comport with Pa.R.A.P. 1925(B)(4).

Rule 1925(b)(4)(ii) provides, "The Statement shall identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge…. Pa.R.A.P. 1925(b)(4)(ii). Rule 1925 is "intended to aid trial judges in identifying and focusing on those issues which the parties plan to raise on appeal." *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super 2001), (citation omitted). "Rule 1925 is thus a crucial component of the appellate process." Id.

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, a trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.

*Dowling*, 778 A.2d at 686 (internal citations omitted). *Commonwealth v. Dowling*, 778 A.2d 683 (Pa. Super. 2001). When challenging the sufficiency of the evidence on appeal, the Appellant must specify which elements of the charge were not proven by a sufficiency of the evidence. *Commonwealth v Gibbs*, 2009 PA Super 181, 981 A.2d 274, 281 (2009).

13

In the instant case, the Defendant does not cite with any specificity what aspect of the evidence presented was insufficient to find him guilty of Intimidation of a Witness. Additionally, he does not identify which element of the charge was not proven beyond a reasonable doubt with the evidence presented. Therefore Appellant's claim challenging the sufficiency of the evidence was not properly preserved and is waived.

**V-VII.      The trial court did not commit any error at sentencing.**

It is well-settled that challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as a matter of right. *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011). Accordingly, before a discretionary challenge can be reviewed by an appellate court, the defendant must satisfy a four-part test: (1) whether the appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006). In the instant case, Defendant filed a timely notice of appeal. He also included in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence. Therefore, the only issue is whether Defendant has raised a substantial question.

## A. The trial court was within its discretion to impose a stay-away order as a term of Defendant's probation.

"The court may impose probation, including 'such reasonable conditions as it deems necessary to insure or assist the defendant in leading a law-abiding life' including those conditions 'related to the rehabilitation of the defendant and not unduly restrictive of his liberty

14

or incompatible with his freedom of conscience." 42 Pa.C.S.A. § 9754(b), (c)(13). *Commonwealth v. Hall*, 80 A.3d 1204 (Pa. 2013). Court imposed conditions, however, cannot "exceed the maximum term for which the defendant could be confined." 42 Pa.C.S.A. § 9754(a).

In the instant case, Defendant was found guilty of Criminal Trespass, which carries a minimum guideline sentence of RS-9 +/- 3 and a maximum statutory limit of 10 years. Accordingly, Defendant was sentenced to 3-6 years state incarceration to run consecutively with a three-year probationary period, which included the stay-away order as a condition of his probation. Therefore, even at the maximum, Defendant's aggregate sentence would amount to a period of up to nine years.

Notwithstanding Defendant's assertion the contrary, the record clearly indicates that the court articulated the reasons for imposition of the aggravated sentence at sentencing. The court explained: I'll certainly put on the record the history of the defendant and the -- presented today, the testimony of the officers the testimony of his past domestic violence incidents that were presented are an aggravating factor. I think the nature of this case, the Prior Bad Acts that the Court admitted into evidence, and witnesses -- I believe two witnesses that testified to Prior Bad Acts, that certainly is a consideration. All of the testimony presented at trial I think make the sentence appropriate. The Prior Bad Acts, the testimony at trial, the testimony we heard today from the officers, as well as the juvenile incidents and the other domestic violence incidents presented that show a pattern by the defendant of violating women and physically attacking women and stalking women, has been abundantly shown based on what was presented here today. N.T. 5/10/17 at 47. Based on the findings of the court, the aggravating factors grossly outweighed any mitigation. A standard range sentence was not appropriate for the conduct of the

15

Defendant in the present case. Therefore the imposition of sentence in this case was proper and was adequately explained on the record.

**B. Admissibility of hearsay evidence at sentencing was proper.**

Defendant next challenges the admissibility of hearsay evidence at sentencing. The admissibility of hearsay evidence at a sentencing hearing is a general and standard practice in the Commonwealth of Pennsylvania. *Commonwealth v. Medley*, 725 A.2d 1225, 1230 (Pa. Super. 1999). Nearly every sentencing proceeding that occurs in the Commonwealth involves hearsay evidence in the form of a presentence investigation report. The objection by the Defendant is wholly without merit with regard to the admissibility of hearsay evidence at sentencing.

Therefore the issues raised by the Defendant with regard to the sentencing hearing are without merit and the sentence of this court should be upheld.

## CONCLUSION

For the foregoing reasons, Defendant's appeal should be denied and the judgment of this court affirmed.

BY THE COURT:

_____
CAROLYN H. NICHOLS, J.

16