J. S66044/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RONALD CHARLES PURVIS, | : | No. 3230 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered July 6, 2018,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0007567-2017

BEFORE:  STABILE, J., NICHOLS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　　　　　Filed:May 21, 2020

Ronald Charles Purvis appeals from the July 6, 2018 judgment of sentence entered by the Court of Common Pleas of Montgomery County after a jury convicted him of two counts each of delivery of a controlled substance, possession of drug paraphernalia, and possession of a controlled substance, and one count each of drug delivery resulting in death, recklessly endangering another person ("REAP"), hindering apprehension or prosecution, tampering with or fabricating physical evidence, and abuse of a corpse.[1]  The trial court

---

[1] 35 P.S. §§ 780-113(a)(30), (32), and (16); 18 Pa.C.S.A. §§ 2506(a), 2705, 5105(a), 4910, and 5510, respectively.

imposed an aggregate sentence of 18-47 years' imprisonment.[2] After careful review, we affirm.

The trial court set forth the following factual history:

> On March 29, 2017, . . . Kevin High was released from the Montgomery County Correctional Facility after serving a sentence. He left the prison by bus and travelled directly to the home of his drug supplier, [appellant], located at 376 E. High Street, Apartment 9, in the Borough of Pottstown. Two individuals, Jennifer Wiegand and [appellant], resided there.
>
> As described by witnesses and corroborated by video surveillance from around appellant's apartment, the events of the afternoon and evening began at approximately 3:09 PM on March 29, 2017, when Kevin High arrived at appellant's apartment at 376 E. High Street in Pottstown after being released from jail earlier that day. He greeted appellant when he got there, and then entered appellant's apartment. A number of other individuals, including Jennifer Wiegand, Shemar Reed, David Hillier, and a friend of Ms. Wiegand's named Jessica, were at the apartment as well. Ms. Wiegand testified that appellant handed Mr. High a wax paper bag of something that he snorted, and, in addition, gave Mr. High something from a small metal container that normally had methamphetamine in it, which the victim snorted. Mr. High took both drugs relatively close in time to each other. Mr. High then asked [] appellant what the drugs were, and appellant failed to respond directly. Soon after he took the drugs, Mr. High sat down on the couch and started to fall asleep. When others attempted to speak to him, he would mumble or nod. Mr. High's complexion changed dramatically. He became pale and his

---

[2] The trial court sentenced appellant to consecutive sentences of 15-40 years' imprisonment for drug delivery resulting in death, 2-5 years' imprisonment for hindering apprehension or prosecution, and 1-2 years' imprisonment for abuse of a corpse. (Notes of testimony, 7/6/18 at 40-41.)

breathing became noisy, labored, and irregular. As a result of Mr. High's obvious physical distress, appellant took out his blood pressure monitor and took Mr. High's blood pressure. No one was able to rouse Mr. High. Appellant then took a "shock collar," typically used on a dog, and placed it around Mr. High's neck. He then shocked the victim in an attempt to wake him up. Mr. High did not respond or wake up. At 4:59 PM, "Jessica"[3] got a glass of water to splash on Mr. High to try to wake him up, to which Mr. High again did not respond. When it became clear that the victim was unconscious and he could not be awakened from any of these stimuli, appellant called a neighbor, Mike Pascal, at approximately 5:47 PM, to help him remove Mr. High from his apartment. With Mr. Pascal's assistance, the pair moved the victim from the couch in the living room to the hallway area outside of appellant's apartment door. Appellant left the victim's unconscious body on the floor, in a hallway of the building, at the top of a flight of stairs. Appellant claimed at the time that ". . . he didn't want Kevin to wake up alone in the apartment; so he wanted to move him outside so he could wake up and just leave." At this point, Mr. High was still alive.

At approximately 9:11 PM, [] appellant, Ms. Wiegand, and Jessica left appellant's apartment and went to Walmart. By this time all the other guests had left appellant's apartment. Mr. High was still lying unconscious in the hallway outside of appellant's apartment. Appellant, Ms. Wiegand, and Jessica checked out of Walmart at 11:22 PM, stopped for fast-food and returned to appellant's apartment. When they returned home, appellant stayed in the car and told Ms. Wiegand to go check on Mr. High. Ms. Wiegand found him where they left him, outside of the apartment door on the landing in the hallway. At that time, Mr. High was obviously deceased. Ms. Wiegand testified that Mr. High looked pale and that she did not feel any breath or pulse. She went back outside and told appellant that the victim had died. Appellant instructed her to get Jess[ica] and go

---

[3] Jessica's last name does not appear in the certified record.

to Wawa. The two women left [] appellant alone at his apartment with the deceased body of the victim lying at the top of the stairs in the hallway. Ms. Wiegand went to Wawa and waited there in the car until appellant told her she could come back. When Ms. Wiegand returned from Wawa, appellant was at his apartment with a neighbor named Floyd Wilkins. Mr. Wilkins dragged Mr. High's dead body from the landing, down the steps, to make it look like he ". . . just walked out there himself." Once the victim's body was dumped on the bottom of the stairs, appellant permitted Ms. Wiegand to call 911.

On March 30, 2017, the Pottstown Police Department responded to Apartment 9 at 376 E. High Street, Pottstown, Pennsylvania for a report of an unconscious subject. At approximately 3:15 AM, officers arrived at the scene and found the victim, Kevin High, deceased in the vestibule at the bottom of the stairway leading up to Apartment 9. The Pottstown Police Department commenced an investigation into the suspicious death of Kevin High culminating in their filing charges against appellant on September 19, 2017.

Trial court opinion, 2/21/19 at 4-7 (citations to the record and extraneous capitalization omitted).

On April 18, 2018, a jury convicted appellant of the aforementioned crimes. Following his conviction and imposition of sentence, appellant filed a timely post-sentence motion, which the trial court denied on October 15, 2018.

Appellant filed a timely notice of appeal. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and appellant timely complied. The trial court subsequently filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

[1.] Did the trial court err in denying [appellant's] motion to suppress where police conducted a custodial interrogation without issuing **Miranda**[4] warnings?

[2.] Did the trial court err in denying [appellant's] motion for a mistrial where jury instructions did not cure the prejudice?

[3.] Was the evidence sufficient to convict [appellant] of abuse of a corpse where the Commonwealth's only eyewitness testified that a man named Floyd was the person who committed the acts giving rise to the charge?

[4.] Did the trial court err in assigning costs of prosecution without a determination of [appellant's] ability to pay where he is indigent?

[5.] Was the sentence manifestly unjust and did the court below abuse its discretion by sentencing [appellant] significantly outside of the guidelines on the basis of incorrect facts and duplicative criteria giving appropriate weight to mitigating factors?

Appellant's brief at ix.[5]

**I.**

In his first issue, appellant argues that the trial court erred when it denied his motion to suppress, in which he alleged that the Commonwealth unlawfully obtained evidence in violation of his **Miranda** rights. (Appellant's

---

[4] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[5] We have reordered appellant's issues for ease of discussion.

brief at 25.) Specifically, appellant avers that he was subjected to a custodial interrogation and he was not given his ***Miranda*** rights. (***Id.*** at 25-26.)

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

***Commonwealth v. Jones***, 121 A.3d 524, 526-527 (Pa.Super. 2015), ***appeal denied***, 135 A.3d 584 (Pa. 2016), quoting ***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

It is axiomatic that under the United States and Pennsylvania Constitutions that an individual subject to a custodial interrogation has a right to remain silent. ***See Miranda***, ***supra***; ***Commonwealth v. Boyer***, 962 A.2d 1213, 1216 (Pa.Super. 2008), citing ***Commonwealth v. Bomar***, 826 A.2d 831, 842 n.12 (Pa. 2003), ***cert. denied sub nom. Bomar v. Pennsylvania***, 540 U.S. 1115 (2004). Our supreme court has provided the following

guidance for determining whether an individual is subject to a custodial interrogation:

> Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way[,]" *Miranda*, [384 U.S.] at 444, [] and the Commonwealth does not contest that appellant was questioned by law enforcement officers; the only dispute is whether he was in custody.
>
> An individual is in custody if he is "physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Johnson*, [] 727 A.2d 1089, 1100 ([Pa.] 1999) (citations omitted). Regarding custody, the United States Supreme Court has further held the "ultimate inquiry is . . . whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322, [] (1994) (citation omitted). The standard for determining whether an encounter is custodial is an objective one, focusing on the totality of the circumstances with due consideration given to the reasonable impression conveyed to the individual being questioned. *Commonwealth v. Gwynn*, [] 723 A.2d 143, 148 ([Pa.] 1998) (Opinion Announcing Judgment of the Court) (citation omitted).

*Commonwealth v. Cooley*, 118 A.3d 370, 376 (Pa. 2015).

In denying appellant's suppression motion, the trial court concluded as follows:

> Considering the totality of the circumstances surrounding [appellant's] questioning by [d]etectives from the Pottstown Police Department on March 30, 2017, [the trial c]ourt concludes that [appellant] was free to leave and was not in custody. [The trial c]ourt

> finds that his statements were voluntary and are not subject to suppression for lack of ***Miranda*** warnings.

Trial court order, 2/21/18 at 10; ¶ 10. Moreover, the trial court explicitly found the testimony of the police officers to be credible and "worthy of belief." (***Id.*** at 8; ¶ 64.)

After a careful review of the record, viewing the totality of the circumstances of appellant's statements to police, the record supports the trial court's factual findings and legal conclusions. Indeed, appellant was not placed in handcuffs when the police transported him to the police station to give a statement regarding Mr. High's death. (Notes of testimony, 2/8/18 at 19.) At no point did appellant tell the police that he did not want to go to the police station. (***Id.*** at 19-20.) When appellant asked if he was in custody, Sergeant Michael Markovich—the lead investigator—told appellant that he was not in custody at that time and that he was free to leave. (***Id.*** at 31.) Moreover, Detective Thomas Leahan testified that he spoke with appellant's then-attorney, Michelle Fioravante, Esq., telling her that the police were investigating a suspicious death, that appellant was not identified as a prime target in their investigation, and that they only wished to speak to him about the circumstances of Mr. High's death. (***Id.*** at 57.) Detective Leahan further testified that Attorney Fioravante told him that appellant could talk as long as he felt comfortable and that the minute he felt uncomfortable, he was to leave. (***Id.*** at 57-58.) The record further reflects that during questioning, appellant wanted to leave and was permitted to do so. (***Id.*** at 34, 58.)

Accordingly, we find that the trial court's factual findings are supported by the record and that the trial court properly applied the law to the facts of the case. Appellant's first issue is without merit.

## II.

In his second issue, appellant contends that the trial court erred when it denied appellant's motion for a mistrial after Jennifer Wiegand testified that appellant "indirectly threatened [her] family if [she] were to testify against him[.]" (Appellant's brief at 42.) Appellant further argues that the prejudice the statement caused to the jury could not be cured by a curative instruction. (*Id.* at 42-43.)

Appellate review of a denial of a motion for a mistrial is governed by the following standard:

> The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

*Commonwealth v. Johnson*, 107 A.3d 52, 77 (Pa. 2014), *cert. denied sub nom. Johnson v. Pennsylvania*, 136 S.Ct. 43 (2015), quoting *Commonwealth v. Rega*, 933 A.2d 997, 1016 (Pa. 2007), *cert. denied sub nom. Rega v. Pennsylvania*, 552 U.S. 1316 (2008) (citation omitted).

When the trial court provides cautionary instructions to the jury in the event the defense raises a motion for mistrial, "[t]he law presumes that the jury will follow the instructions of the court." *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001), *cert. denied sub nom. Brown v. Pennsylvania*, 537 U.S. 1187 (2003) (citation omitted).

At trial, Ms. Wiegand testified for the Commonwealth. On direct examination, Ms. Wiegand testified that she was in a relationship with appellant but that their relationship "wasn't a particularly good one." (Notes of testimony, 4/17/18 at 124.) Ms. Wiegand also stated that appellant "could be abusive at times, physically, emotionally." (*Id.*) Appellant did not object to these statements. Ms. Wiegand then testified that she felt afraid to cooperate with the authorities in this case because she was afraid of appellant. (*Id.* at 130-131.) Appellant did not object to this statement. When asked why she was afraid of appellant, Ms. Wiegand stated that appellant "indirectly threatened [her] family if [she] were to ever testify against [appellant.]" (*Id.* at 131.)

Appellant immediately objected and moved for a mistrial. (*Id.* at 131-132.) The trial court denied appellant's motion for a mistrial and instead provided the jury with the following curative instruction: "The witness made a comment about threats. I am going to strike that from the record, and I'm going to instruct you that you may not consider that last comment at all." (*Id.* at 135.)

- 10 -

Here, appellant fails to demonstrate that the trial court's curative instruction was not adequate to overcome any potential prejudice that would prevent the jury from weighing and rendering a true verdict. Rather, appellant baldly contends that "the surprise testimony regarding an alleged threat made by the accused exponentially buffered the prosecution's theory of [appellant] as a controller who orchestrated the events at issue." (Appellant's brief at 43.) In support of this theory, appellant relies upon statements made by the Commonwealth and the trial court during the sentencing hearing. (*Id.* at 44.) Statements made during the sentencing hearing have no effect on the jury, as the jury had already rendered its verdict in the case. Therefore, appellant did not meet his burden of establishing that the comments at issue prevented the jury from weighing and rendering a true verdict. *Johnson*, 107 A.3d at 77. Accordingly, we find that the trial court did not abuse its discretion when it denied appellant's request for a mistrial.

**III.**

In his third issue, appellant complains that the Commonwealth failed to prove beyond a reasonable doubt that appellant abused a corpse. Specifically, appellant relies on Ms. Wiegand's testimony, which indicated that Mr. Wilkins was the only person to move Mr. High's body from the top of the staircase outside appellant's apartment to the bottom. (Appellant's brief at 44-45.)

Our well settled standard of review in sufficiency of the evidence claims is as follows:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 722-723 (Pa.Super. 2013) (internal quotations and citations omitted). Importantly, "the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence."

- 12 -

> ***Commonwealth v. Ramtahal***, [] 33 A.3d 602, 607
> ([Pa.] 2011).

***Commonwealth v. Sebolka***, 205 A.3d 329, 336-337 (Pa.Super. 2019).

The Crimes Code defines abuse of a corpse as a person, "treat[ing] a corpse in a way that he knows would outrage ordinary family sensibilities[.]" 18 Pa.C.S.A. § 5510. We find this court's decision in ***Commonwealth v. Hutchison***, 164 A.3d 494 (Pa.Super. 2017), ***appeal denied***, 176 A.3d 231 (Pa. 2017), to be instructive. In ***Hutchison***, the defendant argued that failing to notify the authorities when he discovered the decedent's body was not criminalized under Section 5510. ***Id.*** at 498. This court held that evidence of the defendant's failure to notify the authorities of the decedent's death constituted sufficient evidence to warrant a conviction of abuse of a corpse. ***Id.*** at 499.

Here, appellant does not dispute that he did not call 911 immediately upon realizing that Mr. High was dead. To the contrary, the record reflects that appellant waited until Mr. Wilkins moved Mr. High's body to the bottom of the stairwell before telling Ms. Wiegand to call 911. (Notes of testimony, 4/17/18 at 149-150.) When viewing this evidence in the light most favorable to the Commonwealth, we find, in light of our holding in ***Hutchison***, that the Commonwealth introduced sufficient evidence to warrant a conviction of abuse of a corpse. ***See Hutchison***, 164 A.3d at 499.

**IV.**

In his fourth issue, appellant claims that the trial court erred when it assigned the costs of prosecution to appellant as part of his sentence. (Appellant's brief at 48.)  Appellant acknowledges that he is raising this issue for the first time on appeal.  (***Id.***)  Generally, raising an issue for the first time on appeal results in waiver of that issue.  ***Commonwealth v. Johnson***, 33 A.3d 122, 126 (Pa.Super. 2011), ***appeal denied***, 47 A.3d 845 (Pa. 2012), citing ***Commonwealth v. Rush***, 959 A.2d 945, 949 (Pa.Super. 2008), ***appeal denied***, 972 A.2d 521 (Pa. 2009).  Appeals pertaining to the legality of sentence, however, are non-waivable and can be raised for the first time on appeal.  ***Commonwealth v. Bezick***, 207 A.3d 400, 403 (Pa.Super. 2019) (citation omitted).  This court has recognized that appeals addressing the trial court's authority to impose costs challenge the legality of the sentence. ***Commonwealth v. Garzone***, 993 A.2d 306, 316 (Pa.Super. 2010), ***aff'd.***, 34 A.3d 67 (Pa. 2012), citing ***Commonwealth v. Allshouse***, 924 A.2d 1215 (Pa.Super. 2007) (citation omitted).  Accordingly, we find that appellant challenges the legality of his sentence.  Therefore, we will review this issue on its merits.

Here, appellant specifically contends that both statutory law and the Pennsylvania Rules of Criminal Procedure require that "the sentencing court consider a defendant's ability to pay prior to [imposing costs] and that such

costs should be waived where a [defendant] is indigent." (Appellant's brief at 48.)

The Judiciary Code requires a trial court to order a convicted defendant to pay costs. 42 Pa.C.S.A. § 9721(c.1). In **Commonwealth v. Ciptak**, this court held that a "defendant's liability for costs is not part of the punishment for the offense, and it is not a sentence to pay something additional to any penalty imposed by law." 657 A.2d 1296, 1297 (Pa.Super. 1995), **rev'd. on other grounds**, 665 A.2d 1161 (Pa. 1995), citing **Commonwealth v. Bollinger**, 418 A.2d 320 (Pa.Super. 1979.) Indeed, our supreme court has recognized that,

> Although a presentence ability-to-pay hearing is not required when costs alone **are imposed**, our Rules of Criminal Procedure provide that a defendant cannot be committed to prison for failure to pay a fine or costs unless the court first determines that he or she has the financial means to pay the fine or costs. Pa.R.Crim.P. 706(A).

**Commonwealth v. Ford**, 217 A.3d 824, 826 n.6 (Pa. 2019) (emphasis added).

Here, appellant is not being incarcerated due to his ability, or lack thereof, to pay the costs of prosecution imposed at this sentencing. Because our supreme court does not require a sentencing court to hold an ability to pay hearing prior to the imposition of costs, we find that the trial court did not err when it did not conduct a hearing to determine appellant's ability to pay

the costs of prosecution. *Id.* Accordingly, appellant's fourth issue is without merit.

**V.**

In his final issue, appellant contends that the trial court abused its discretion when it imposed sentences for drug delivery resulting in death, hindering prosecution, and abuse of a corpse in excess of the sentencing guidelines. (Appellant's brief at 17.) Put another way, appellant raises a challenge to the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentence are not appealable as of right. *Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa.Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Id.* (citation omitted).

*Commonwealth v. Padilla-Vargas*, 204 A.3d 971, 975 (Pa.Super. 2019).

Here, appellant filed a timely notice of appeal and filed a post-sentence motion in which he alleged that the trial court imposed a manifestly excessive and unreasonable sentence. (*See* appellant's post-sentence motion, 7/16/18 at 6-9.) Appellant also included a Rule 2119(f) statement in his brief. (*See* appellant's brief at 14-17.)

We must now determine whether appellant raised a substantial question.

> "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa.Super. 2011). Further:
>
>> A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.
>
> ***Id.*** (internal citations omitted).

***Commonwealth v. Swope***, 123 A.3d 333, 338 (Pa.Super. 2015). This court has held that a claim that a trial court does not sufficiently state its reasons for deviating from the sentencing guidelines raises a substantial question. ***Commonwealth v. Twitty***, 876 A.2d 433, 439 (Pa.Super. 2005), ***appeal denied***, 892 A.2d 823 (Pa. 2005), citing ***Commonwealth v. Brown***, 741 A.2d 726, 735 (Pa.Super. 1999), ***appeal denied***, 790 A.2d 1013 (Pa. 2001).

Here, appellant claims that the trial court's departure from the sentencing guidelines was improper because it "relied upon reasons that did not justify the departure[,]" that the trial court failed to adequately consider mitigating factors set forth by appellant, and that the trial court "relied upon factors that were necessary elements to establish the crimes [appellant] committed and that were already incorporated into the offense gravity

scores." (Appellant's brief at 17.) Put another way, appellant alleges that the reasons relied upon by the trial court in crafting his sentence were not sufficient to justify a deviation from the sentencing guidelines. We, therefore, find that appellant has raised a substantial question, and we shall consider this appeal on its merits. *Twitty*, 876 A.2d at 439 (holding that allegation of trial court failure to sufficiently state reasons for deviating from sentencing guidelines raises substantial question).

When reviewing the merits of appellant's claim, we are governed by the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014), *appeal denied*, 117 A.3d 297 (Pa. 2015), quoting *Commonwealth v. Hoch*, 936 A.2d 515, 517-518 (Pa.Super. 2007) (citation omitted).

On appeal, appellant argues that the trial court's reasons for deviating from the sentencing guidelines "belie the excessiveness of the sentence." (Appellant's brief at 21.) Specifically, appellant contends that the trial court "relied on elements of offenses for which [appellant] was convicted as

aggravating factors. The trial court also wrongly attributed actions of others to [appellant] and does not significantly weigh mitigating factors." (*Id.*)

> In every case where the court imposes a sentence outside the sentencing guidelines . . . the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

*Leatherby*, 116 A.3d at 83, quoting *Commonwealth v. Rodda*, 723 A.2d 212, 215 (Pa.Super. 1999), citing 42 Pa.C.S.A. § 9721(b).

In the instant case, the trial court enumerated its reasons for deviating from the sentencing guidelines both in writing and in remarks delivered from the bench during appellant's sentencing hearing. (*See* trial court order, 7/31/18;[6] notes of testimony, 7/6/18 at 35-40.) In its order, the trial court concluded that "[appellant's] actions were undertaken with malice and a reckless disregard for the value of human life." (Trial court order, 7/31/18 at 1.) Additionally, the trial court stated that appellant's efforts to conceal the victim, prevent others from seeking assistance, and destroy evidence "all reflect the worst violations of these crimes[,]" and that appellant's conduct rose above "conduct that would constitute violations of these statutes.[.]" (*Id.*) The trial court also noted that appellant displayed "a complete lack of remorse and cruelty as evidenced by his winking at the family and supporters

---

[6] While the trial court's order explaining its reasons for deviating from the sentencing guidelines is dated July 6, 2018, it was not entered by the Montgomery County clerk of courts until July 31, 2018.

of [Mr. High] in court after the verdict[.]" (*Id.*) Finally, the trial court acknowledged the sentencing guidelines and found the guideline sentencing ranges to be "inappropriately low considering the severity of [appellant's] specific actions" giving rise to his convictions. (*Id.*)

As evidenced above, the record reflects that the trial court considered the sentencing guidelines and chose to deviate from them after setting forth the reasons for doing so. (*See* notes of testimony, 7/6/18 at 35-40; trial court order, 7/31/18.) We, therefore, discern no abuse of discretion on the part of the trial court.

Finally, appellant argues that the trial court failed to adequately weigh his mitigating factors, "such as: [appellant's] lack of family support and [appellant's] struggle with alcohol addiction, ADHD, and depression." (Appellant's brief at 24.) This claim is without merit.

We have held that, "[w]hen a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." *Commonwealth v. Baker*, 72 A.3d 652, 663 (Pa.Super. 2013), *appeal denied*, 86 A.3d 231 (Pa. 2014), citing *Commonwealth v. Fowler*, 893 A.2d 758, 767 (Pa.Super. 2006). Here, the record reflects that the trial court reviewed appellant's presentence investigation report, as well as the PPI evaluation. (Notes of testimony, 7/6/18 at 33.) Additionally, the trial court explicitly states that it considered any mitigating factors based on its

review of the presentence investigation report in its Rule 1925(a) opinion. (Trial court opinion, 2/21/19 at 38.)[7]  Accordingly, we find that appellant's claim that the trial court failed to consider his mitigating factors is without merit.

We, therefore, discern no abuse of discretion in the sentence imposed by the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/20

---

[7] Appellant's claim is further belied by the record of his sentencing hearing. Indeed, appellant's counsel noted that appellant had a history of ADHD, depression, and anxiety.  (Notes of testimony, 7/6/18 at 23.)  Counsel also noted that appellant had a history of addiction and further noted that no one from appellant's family attended the trial.  (**Id.** at 24, 26-27.)  The trial court acknowledged counsel's argument before imposing sentence.  (**Id.** at 34.)